NORTH CAROLINA NATIONAL BANK v. C. P. ROBINSON COMPANY, INC.
AND C. P. ROBINSON, JR.

No. 269A86

(Filed 3 February 1987)

1. Wills § 9.1; Execution § 1 — execution on remainder interest under will — county of judgment or county of probate

The trial court did not err by failing to transfer an action which sought to have a remainder interest under a will sold under execution from the county of judgment to the county of probate. The proceeding was in the nature of a creditor's supplemental proceeding under N.C.G.S. 1-307 which required that the action be filed in the county of judgment, and the trial judge was required

to find only that defendant possessed some interest under his father's will. Whether the interest was vested or contingent was immaterial and unnecessary to the order and the finding of a vested remainder interest under the will has no binding effect on any action brought to determine the nature of the interest purchased at the execution sale. N.C.G.S. 28A-3-1.

### 2. Execution § 1— contingent future interests—subject to execution

Contingent future interests are subject to execution by a judgment creditor of a remainderman; *Watson v. Dodd,* 68 N.C. 528, and *Bourne v. Farr,* 180 N.C. 135, are overruled to the extent that they are inconsistent with this holding. N.C.G.S. 39-6.3 (1983).

Justice WEBB did not participate in the consideration or decision of this case.

ON appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals reported at 80 N.C. App. 160, 341 S.E. 2d 362 (1986), vacating judgment of *Freeman, J.,* entered 28 September 1984, which subjected to execution and sale defendant Robinson's future interest in stock.

*Hutchins, Tyndall, Doughton & Moore, by George E. Doughton, Jr., and Kent L. Hamrick, for plaintiff-appellant.*

*Moore, Ragsdale, Liggett, Ray & Foley, P.A., by Jane Flowers Finch, for defendant-appellee C. P. Robinson, Jr.*

MEYER, Justice.

This appeal presents two principal questions for resolution: (1) whether a Forsyth County Superior Court may properly order a judgment of execution on a remainder interest created by a will that was probated in Anson County, and (2) whether a contingent remainder interest may be executed upon by a creditor of a remainderman. We answer both questions in the affirmative and therefore reverse the decision of the Court of Appeals.

On 9 June 1972, defendant C. P. Robinson, Jr., executed and delivered to the plaintiff, North Carolina National Bank (hereinafter "NCNB"), a promissory note whereby Robinson, as endorser for his company, promised to pay the lump sum of $100,000, with interest, on 8 August 1972. Defendant failed to pay the note, and on 14 November 1974 NCNB obtained a judgment in Forsyth County against defendant for $100,000, with interest at 7% per annum from 8 August 1972.

In 1975, an execution issued in Forsyth County against the defendant was returned unsatisfied.

In 1980, defendant's father, Charles Robinson, Sr., died and left a holographic will which was probated in the office of the Clerk of Superior Court of Anson County. The will contained the following bequest:

> I bequeath all other properties and the income therefrom to my beloved wife Hannah Washburn Robinson, during her lifetime. If she remarries, at her death my estate shall be left to my children, Betsy R. Lewis Jr. [sic] and Charles Phillips Robinson Jr.

In 1982, Hannah Robinson, describing herself as the life tenant of the property described in the bequest, petitioned the Anson County Superior Court to serve as trustee of the stock certificates and notes in the estate of her husband. The petition was granted on 14 September 1982.

In February 1984, NCNB served Robinson with a "Notice of Right to Have Exemptions Designated." The notice was filed in Forsyth County. On 8 May 1984, District Court Judge Gatto issued an order exempting certain of Robinson's property from execution.

On 5 July 1984, NCNB filed an execution in Superior Court, Forsyth County, and it was transmitted to Anson County for execution. The execution was returned unsatisfied by the sheriff's office of Anson County.

Having learned of the existence of the will of Charles Robinson, Sr., and of the alleged interest of Hannah Robinson in the property as life tenant and trustee, NCNB moved for a preliminary injunction restraining Robinson from transferring or otherwise disposing of his remainder interest under his father's will. NCNB also moved that Robinson's interest under the will be sold pursuant to N.C.G.S. § 1-362 and that a receiver be appointed pursuant to N.C.G.S. § 1-363.

On 30 July 1984, Judge Gatto issued a temporary restraining order in which Robinson was ordered to refrain from transferring or otherwise disposing of his interest in property under his father's will. In response to the issuance of the temporary restrain-

ing order, Robinson filed motions to transfer to the superior court division, to transfer to Anson County, to continue, and to dismiss for failure to join a necessary party. Robinson also moved to dissolve the temporary restraining order. Judge Gatto later extended the temporary restraining order issued on 30 July 1984.

On 16 August 1984, the Forsyth County Superior Court, Judge Albright presiding, granted Robinson's motion to transfer the case from the district court division to the superior court division. The court also extended the original temporary restraining order for ten days or until such time as the motion for a preliminary injunction could be heard.

In an order dated 28 September 1984 in Forsyth County Superior Court, Judge Freeman denied Robinson's motion to transfer the action to Anson County and to dismiss for failure to join necessary parties. In the same order, the court granted NCNB's motion for an order to prohibit the sale of Robinson's remainder interest and NCNB's motion that Robinson's remainder interest be sold under execution and the proceeds applied toward the satisfaction of NCNB's 1974 judgment. As part of his 28 September 1984 order, Judge Freeman found that defendant possessed a vested remainder interest in the will of his father. The court further found that this interest included defendant's one-half interest in intangible assets (stocks and notes) subject to the life estate of his mother, Hannah Robinson.

On 13 November 1984, pursuant to Judge Freeman's 28 September 1984 order, Robinson's remainder interest under his father's will was sold at a public sale at the Anson County courthouse. NCNB was the last and highest bidder, with a bid of $25,000.

The Court of Appeals, 80 N.C. App. 160, 341 S.E. 2d 362, vacated the judgment of the Forsyth County Superior Court. The majority held that the trial court erred in denying defendant's motion to transfer the action to Anson County. The majority also held that the "better policy" in such a case is to allow a construction of the will in the county of probate and then allow defendant to execute from the county of judgment, in this case Forsyth County.

Judge (now Justice) Webb dissented on the ground that there was no construction of the will in Forsyth County. The dissent

reasoned that, subsequent to the sale, NCNB may bring an action for declaratory judgment to determine the nature of the interest which it purchased at sale.

We reverse the Court of Appeals and hold that NCNB properly executed on its judgment. The Forsyth County Superior Court was empowered to order the sale of Robinson's remainder interest under his father's will.

## I.

[1] We first address defendant's contention that the trial court erred in failing to transfer this matter to Anson County, the county in which the will was probated.

The majority of the Court of Appeals accepted defendant's contention that N.C.G.S. § 28A-3-1 requires that his interest under his father's will be determined in Anson County, the county where the will was probated.

N.C.G.S. § 28A-3-1 provides in pertinent part:

The venue for the probate of a will and for all proceedings relating to the administration of the estate of a decedent shall be:

(1) If [sic] the county in this State where the decedent had his domicile at the time of his death . . . .

N.C.G.S. § 28A-3-1(1) (1984).

The Court of Appeals held that because Robinson's father lived in Anson County and his will was probated there, the nature of defendant's interest under the will must be determined in Anson County before that interest may be ordered sold under execution. We disagree.

The purpose of probate is to establish that the will in question has been executed in a proper manner and that it constitutes the last will of the deceased. 1 N. Wiggins, *Wills and Administration of Estates in North Carolina 2d* § 112 (1983). Probate has been defined as the judicial process by which a court of competent jurisdiction in a duly constituted proceeding tests the validity of the instrument and determines whether it is the last will and testament. *In re Lamb*, 303 N.C. 452, 459, 279 S.E. 2d 781, 786 (1981).

Were NCNB attacking the validity of the will or seeking to determine its rights under the will, then the proceedings would be governed by N.C.G.S. § 28A-3-1 and Anson County would be the appropriate venue. However, NCNB's action in the present case is not a part of probate but rather a supplemental creditor proceeding instituted to enforce its 1974 judgment obtained in Forsyth County. The statute governing supplemental creditor proceedings *requires* that the action be filed in Forsyth County. That statute provides in pertinent part:

> Executions and other process for the enforcement of judgments can issue *only* from the court in which the judgment for the enforcement of the execution or other final process was rendered . . . .

N.C.G.S. § 1-307 (1983) (emphasis added).

In his 28 September 1984 order, Judge Freeman found as a fact that Robinson possessed a vested remainder interest under his father's will and ordered that it be executed upon to satisfy the 1974 judgment. On appeal, Robinson argues that Judge Freeman's order amounted to an interpretation of the will for which the proper venue is the place of probate, Anson County. Because we find that the proceeding is in the nature of a creditor's supplemental proceeding under N.C.G.S. § 1-307, the trial judge did not err in denying Robinson's motion to transfer to Anson County, where the will was probated.

In order to issue an execution on defendant's interest under his father's will, Judge Freeman was required to find only that defendant possessed *some* interest under his father's will. Whether the interest was vested or contingent was immaterial and thus unnecessary to the order. Because the finding was unnecessary to the order, it has no binding effect on any action which might be brought to determine the nature of the interest purchased at the execution sale. Because we find that interpretation of the will was unnecessary to the order, the question of whether a will may be construed in a nonprobate action brought in a county different from that in which the will was offered for probate is not before us, and we decline to resolve it. *See* 4 W. Bowe & D. Parker, *Page on the Law of Wills* § 31.5 n. 16 (rev. ed. 1961 & Cum. Supp. 1986). Of course, in situations such as that

presented in the case at bar, nothing prohibits an interpretation of a will in the county of probate prior to judicial sale.

## II.

[2] The second issue we address is whether a contingent future interest is subject to execution by a judgment creditor of a remainderman.

In part I of our opinion, we held that the interpretation of the will was unnecessary to Judge Freeman's order of execution. Therefore, we need not determine whether he properly found that Robinson possessed a "vested" remainder interest under the will.

Defendant argues that if his interest were contingent rather than vested, it would not be subject to execution by his creditors. In order to address defendant's argument, we assume, *without deciding*, that Robinson possessed a contingent future interest.

The English common law long recognized that contingent remainders in land were not transferable *inter vivos*. As Professor Simes stated in his treatise:

> The rules as to the alienability of future interests in personalty followed the same lines as those with respect to realty. In 1845, by statute, in England all varieties of contingent future interests in land were made alienable.

4 L. Simes & A. Smith, *The Law of Future Interests* § 1853, at 159-60 (2d ed. 1956 & Supp. 1985) (footnotes omitted).

In the United States, most jurisdictions now allow for the free transferability of future interests. Some statutes specifically state that contingent future interests are alienable. *See* 4 L. Simes & A. Smith, *The Law of Future Interests* § 1854, at 160-61 (2d ed. 1956 & Supp. 1985).

North Carolina's statute allowing for free alienability of future interests provides:

> (a) The conveyance, by deed or will, of an existing future interest shall not be ineffective on the sole ground that the interest so conveyed is future or *contingent*. All future interests in real or *personal property*, including all reversions, executory interests, vested and *contingent remainders*,

rights of entry both before and after breach of condition and possibilities of reverter *may be conveyed by the owner thereof, by an otherwise legally effective conveyance, inter vivos* or testamentary, subject, however, to all conditions and limitations to which such future interest is subject.

(b) The power to convey as provided in subsection (a), can be exercised *by any form of conveyance, inter vivos* or testamentary, which is otherwise legally effective in this State at the date of such conveyance to transfer a present estate of the same duration in the property.

(c) This section shall apply only to conveyances which become operative to transfer title on or after October 1, 1961.

N.C.G.S. § 39-6.3 (1984) (emphasis added).

Prior to the enactment of N.C.G.S. § 39-6.3, a long line of North Carolina decisions held that contingent interests could be voluntarily sold, assigned, transmitted, or devised provided the identity of the persons who would take upon the happening of the contingency could be ascertained. *Jernigan v. Lee*, 279 N.C. 341, 345, 182 S.E. 2d 351, 355 (1971). Also, prior to the enactment of N.C.G.S. § 39-6.3, our decisional law consistently denied attempts by creditors to execute on a contingent future interest.

In *Watson v. Dodd*, 68 N.C. 528 (1873), this Court denied relief to a creditor who attempted to reach the debtor's contingent future interest. Chief Justice Pearson noted that although the interest was not assignable at law, a court of equity could compel transfer if there were an assignment for valuable consideration. *Id.* at 530. The rule of *Watson*—that contingent remainders were not subject to a judgment creditor's execution—was dictated by the fact that a legal rather than an equitable remedy was sought. Although law and equity were merged at the time, the decision seems to rest largely on the basis that law courts did not recognize an *inter vivos* transfer of a future interest.

Commenting on the rule established by *Watson* and its progeny, the late Dean Mordecai stated:

While possibilities and contingent interests may be alienated in equity, they cannot be sold under execution; *for*

*execution sales are governed in this respect by the strict
rules of law applicable to the transfer of such interests.*

S. Mordecai, *Law Lectures* 654 (1907) (emphasis added). *See also
Bourne v. Farr*, 180 N.C. 135, 137, 104 S.E. 170, 172 (1920) (dicta:
although contingent interest could be transferred, interest not
subject to execution). In view of the enactment of N.C.G.S.
§ 39-6.3 allowing for a legal conveyance of a future interest, and
the recognition of one form of civil action, N.C.R. Civ. P. 2, *Watson* seems to be a relic of our legal history.

In jurisdictions that have addressed the question presented
here, considerations of public policy have often dictated whether
contingent future interests should be subject to creditors' claims.
In an exhaustive study, Professor Halbach summarized the arguments in favor of and against allowing a creditor to execute on a
contingent future interest:

> Two general considerations favor not permitting
> creditors to reach future interests to satisfy their claims,
> even if the interests are alienable: (1) the general policy
> which opposes frustration of the donor, grantor, or testator's
> intent; and (2) the general opposition to the forced sale of
> property under speculative conditions, at great sacrifice to
> the debtor and disproportionately small return to the creditor. If an estate *in futuro* is sold under these conditions, and
> at a later date happens to "materialize[,]" much of the
> creditor's claim goes unsatisfied due to the small realization
> on the sale of the property. The debtor has also been deprived of that part of the value of the property which could
> have been obtained if he had been allowed to retain the interest until it materialized, less the amount of the creditor's
> claim. The only party who gains is the buyer of the property,
> whose windfall is actually a reward for gambling.

> On the other hand, it is somewhat harsh to deny a creditor access to a property interest which his debtor can voluntarily transfer. Further, assets are generally not exempt
> from execution merely because they are not readily marketable. Apparently, there is nothing inherent in a future interest
> which warrants preferred treatment over other assets not
> having an *in futuro* nature. Moreover, unvested estates are

generally viewed with *disfavor* because of the complications they cause land titles and transactions.

These are the considerations upon which courts and legislatures should decide whether the peculiarities of the contingent future interests justify special immunity from creditors' claims.

Halbach, *Creditors' Rights in Future Interests*, 43 Minn. L. Rev. 217, 232 (1958) (footnotes omitted).

The drafters of the Restatement of Property adopt the position that contingent future interests are subject to the claims of creditors. Restatement of Property § 166 (1936). Likewise, a substantial majority of jurisdictions, by statute or judicial decision, allow a judgment creditor to reach a contingent future interest. *See* 2A R. Powell, *The Law of Real Property* ¶ 27[3][b] n. 19 (Rohan rev. ed. 1986); 1 A. Casner, *American Law of Property* § 4.79 (1952 & Supp. 1962); 4 L. Simes & A. Smith, *The Law of Future Interests* § 1924, at 217 (2d ed. 1956 and Supp. 1985).

We are sympathetic to defendant's argument that a forced sale of a contingent future interest may provide little satisfaction to the creditor at the expense of a potentially significant interest of the debtor. However, because the General Assembly has approved of the *inter vivos* conveyances of contingent future interests, N.C.G.S. § 39-6.3 (1983), it follows that a judgment creditor should be allowed to pursue an otherwise nonexempt future interest. To hold otherwise would amount to sanctioning an intolerable anomaly by which otherwise nonexempt property would be placed beyond the legitimate reach of creditors. We hold that contingent future interests are subject to execution by a judgment creditor of a remainderman. To the extent that *Watson v. Dodd*, 68 N.C. 528, and *Bourne v. Farr*, 180 N.C. 135, 104 S.E. 170, are inconsistent with our holding today, those opinions are hereby overruled.

For the reasons stated herein, we reverse the Court of Appeals and remand the case to that court for reinstatement of the trial court's judgment.

Reversed and remanded.

Justice WEBB did not participate in the consideration or decision of this case.