**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

S & D LAND CLEARING, United
States of America, for the use and
benefit of; MIKE MITCHELL, d/b/a
Malaco,
<em>Plaintiffs-Appellees,</em>

v.

D'ELEGANCE MANAGEMENT LIMITED,
INCORPORATED,
<em>Defendant-Appellant,</em>

and

ENVIRONMENTAL CORRECTIONS
CORPORATION, a/k/a Waste Control
Services; UNIVERSAL SURETY OF
AMERICA,
<em>Defendants.</em>

No. 01-1553

D'ELEGANCE MANAGEMENT LIMITED,
INCORPORATED, United States of
America for the use and benefit of,
<em>Plaintiff-Appellant,</em>

v.

UNIVERSAL SURETY OF AMERICA,
<em>Defendant-Appellee,</em>

and

ENVIRONMENTAL CORRECTIONS
CORPORATION, a/k/a Waste Control
Services,
<em>Defendant.</em>

No. 01-1509

MIKE MITCHELL, d/b/a Malaco,
*Plaintiff-Appellee,*

and

S & D LAND CLEARING, United States of America, for the use and benefit of,
*Plaintiff,*

v.

VEZINA, LAWRENCE & PISCITELLI, P.A.,
*Intervenor-Appellant.*

and

D'ELEGANCE MANAGEMENT LIMITED, INCORPORATED; ENVIRONMENTAL CORRECTIONS CORPORATION, a/k/a Waste Control Services; UNIVERSAL SURETY OF AMERICA,
*Defendants.*

No. 01-1576

S & D LAND CLEARING, United
States of America, for the use and
benefit of; MIKE MITCHELL, d/b/a
Malaco,

*Plaintiff-Appellee,*

and

UNIVERSAL SURETY OF AMERICA,

*Defendant-Appellee,*

v.

VEZINA, LAWRENCE & PISCITELLI,
P.A.,

*Intervenor-Appellant,*

and

D'ELEGANCE MANAGEMENT LIMITED,
INCORPORATED; ENVIRONMENTAL
CORRECTIONS CORPORATION, a/k/a
Waste Control Services,

*Defendants.*

No. 01-2043

Appeals from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CA-97-49-7-F, CA-97-212-F)

Argued: February 26, 2002

Decided: April 25, 2002

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

Nos. 01-1553, 01-1509, and 01-1576 affirmed in part and dismissed
in part, and No. 01-2043 dismissed by unpublished per curiam opin-
ion.

**COUNSEL**

**ARGUED:** Stephen Bruce Rakusin, Ft. Lauderdale, Florida; Michael A. Piscitelli, VEZINA, LAWRENCE & PISCITELLI, P.A., Ft. Lauderdale, Florida, for Appellants. Augustus Graham Shirley, II, LEWIS & ROBERTS, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Charles D. Meier, MARSHALL, WILLIAMS & GORHAM, L.L.P., Wilmington, North Carolina; Robert Gibbs Watt, WATT, TIEDER & HOFFAR, McLean, Virginia, for Appellants. C. Hamilton Jarrett, III, CONNER, GWYN, SCHENCK, P.L.L.C., Raleigh, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

D'Elegance Management Limited, Incorporated (D'Elegance) and its counsel, the law firm of Vezina, Lawrence and Piscitelli (VLP) (collectively Appellants), appeal from three orders of the district court in two related cases that arise out of the removal of debris in North Carolina following Hurricane Fran. The two cases, one brought by D'Elegance seeking payment from two bonds issued by Universal Surety of America (Universal) to cover clean-up work performed by D'Elegance (the Bond Case) and the other brought against D'Elegance by Mike Mitchell d/b/a Malaco and S&D Land Clearing (collectively Malaco) seeking damages with regard to work it did to assist in the clean-up[1] (the Debris Case), reach this court for the sec-

---

[1] Both cases originally included claims under the Miller Act, 40 U.S.C.A. §§ 270a-270d (West 1986). Persons asserting claims under this Act must bring their claims "in the name of the United States for the use of the person suing." 40 U.S.C.A § 270b(b). For the ease of reference, however, we will refer to the cases as having been brought by D'Elegance and Malaco.

ond time. *See United States for Use and Benefit of S & D Land Clearing v. D'Elegance Ltd., Inc.*, No. 9802758, 2000 WL 966034 (4th Cir. July 13, 2000) (*D'Elegance I*) (affirming the district court's judgment in the Debris Case except for its decision to set aside Malaco's compensatory damage award); *United States for Use and Benefit of D'Elegance, Ltd., Inc. v. Universal Surety of Am.*, No. 99-2195, 2000 WL 1224164 (4th Cir. Aug. 29, 2000) (*D'Elegance II*) (reversing the district court's grant of summary judgment in the Bond Case against D'Elegance as to first bond and affirming its grant of summary judgment against D'Elegance as to second). Although these current appeals have not been formally consolidated, they are factually interrelated to such a degree that we conclude it is appropriate to resolve them in a single opinion.

Appellants challenge three orders issued by the district court. First, on March 16, 2001, in the Bond Case, the district court ordered Universal to pay the judgment against it in the amount of $250,000, plus costs in the amount of $5,231.87 and post-judgment interest, into the Office of the Clerk of the Court. Second, on March 21, 2001, in the Debris Case, the district court, on Malaco's motion, commenced supplemental proceedings to enforce the judgment against D'Elegance and ordered Appellants not to transfer any property of D'Elegance that was not exempt from execution. Third, on July 3, 2001, the district court denied VLP's motion for leave to file a Notice of Charging Lien in the Bond Case. Because the district court has not ruled on the ultimate fate of the funds paid by Universal to the Office of the Clerk of the Court, the challenges to the March 16 and July 3 orders are unreviewable as interlocutory. With regard to the appeal from the March 21 order, the district court did not err in allowing supplemental proceedings and the order not to transfer D'Elegance's property was appropriate under such proceedings.

I.

On September 6, 1996, Hurricane Fran, a category 3 hurricane on the Saffir/Simpson Hurricane Scale, made landfall on the North Carolina coast near Cape Fear. Hurricane Fran, one of the costliest in United States history, killed 34 people and caused over $3.2 billion in property damage.

On September 18, 1996, the U.S. Army Corps of Engineers (the Corps) awarded a contract to Waste Control Services for the removal of debris in eight counties in North Carolina. Waste Control then subcontracted with D'Elegance for the removal of construction and demolition debris (C & D debris) in both Pender and New Hanover Counties. D'Elegance agreed to remove at least 5,000 cubic yards of such debris a day. Waste Control, as required by its contract with the Corps, executed and delivered two payment bonds that would provide coverage for the protection of its subcontractors, with Waste Control as principal and Universal as surety.

D'Elegance in turn subcontracted with Malaco to perform all of D'Elegance's debris-removal work, misrepresenting to Malaco that the work would involve not only C & D debris but also vegetative debris.[2] Malaco subcontracted with a trucking company for enough trucks to meet D'Elegance's quota of 5,000 cubic yards per day. Once removal began, however, D'Elegance used other haulers, leaving most of Malaco's debris removal capacity unutilized. The small amount of C & D debris Malaco was allowed to remove was the least profitable.[3] Malaco encountered other difficulties, including D'Elegance's efforts to hire away Malaco's truck drivers with promises of higher pay and warnings that Malaco did not have a contract and was not going to get paid. Malaco continued to haul C & D debris until October 29, 1996, at which time Waste Control instructed Malaco to cease work on the project because Malaco was not going to be paid by D'Elegance. Although D'Elegance did pay $55,344 to Malaco and $80,629.33 directly to Malaco's subcontractors, at the time of the work stoppage, D'Elegance owed Malaco a balance of $62,232.54 for the debris Malaco had removed. On November 4, 1996, D'Elegance offered to pay Malaco if the latter would sign a backdated contract with terms materially different from the original contract, but Malaco declined. This situation left Malaco deeply indebted to its subcontractors. At the same time, Waste Control did

---

[2]Removing vegetative debris is quicker than removing C & D debris and therefore is more profitable. D'Elegance, however, had only contracted with Waste Control to remove C & D debris.

[3]For example, Malaco was not allowed to remove C & D debris that already had been stockpiled.

not pay the full amount of D'Elegance's $2,752,684 invoice, leaving a balance of at least $369,623.23.

On March 5, 1997, Malaco initiated the Debris Case by filing a complaint against Waste Control, D'Elegance, and Universal. Malaco claimed, among other things, that D'Elegance had breached its contract with Malaco and had violated North Carolina's unfair and deceptive trade practices statute. *See* N.C. Gen. Stat. § 75-1.1 (1999) (Chapter 75). D'Elegance counter-claimed against Malaco for breach of contract, asserting that Malaco had failed to meet the 5,000 cubic yards per-day quota and had failed to pay its subcontractors in a timely fashion. D'Elegance initiated the Bond Case on December 3, 1997, by filing suit against Waste Control and Universal to recover the unpaid balance from its invoice. On February 25, 1998, the district court consolidated the Bond Case and the Debris Case.

The case was tried before a jury in August 1998, and the jury found, with regard to the claims in the Debris Case, in favor of Malaco and against D'Elegance.[4] With regard to the claims in the Bond Case, the district court declared a mistrial, and consequently, the cases were severed on January 27, 1999.

On appeal of the Debris Case, this court affirmed the denial of D'Elegance's motion for judgment as a matter of law, the denial of treble damages, and the registration of the judgment.[5] *See D'Elegance I*, at *9. We reversed, however, the district court's ruling to set aside the jury's fraud verdict and ordered that the jury's fraud award should be reinstated and trebled pursuant to Chapter 75. *Id.* (affirming in part and reversing in part, but not remanding). As a result, D'Elegance became indebted to Malaco for a total of $841,828.00, plus interest: $400,000 in compensatory damages for

---

[4]On November 10, 1998, D'Elegance transferred substantial assets to its principals, Donnie and Metra Hughes, and to Artem, Inc.

[5]The district court certified the judgment for registration in another district on March 17, 1999. On October 12, 1999, a Writ of Execution was issued in the Southern District of Florida, where D'Elegance, which is incorporated in the state of Florida, had a bank account. The writ was submitted to the United States Marshals Service but was returned unsatisfied on November 10, 1999.

breach of contract; $300,000.00 in trebled compensatory damages for fraud; and $141,828.00 for attorney's fees, costs, and expenses.

In the Bond Case, the district court granted Universal's motion for summary judgment as to both payment bonds on August 5, 1999. D'Elegance appealed and on August 29, 2000, we determined that the district court erred in failing to grant D'Elegance's motion for partial summary judgment as to the value of the first payment bond.[6] *See D'Elegance II*, at * 4. With regard to the second bond, we affirmed the grant of summary judgment against D'Elegance and remanded for further proceedings. *Id.*

Following our decisions in the two cases, the district court entered the three orders that are now the subject of this appeal. Specifically, D'Elegance brings appeals No. 01-1509 and 01-1553 challenging the district court's March 16, 2001 and March 21, 2001 orders, respectively, and VLP brings appeals No. 01-1576 and 01-2043 challenging the district court's March 21, 2001 and July 3, 2001 orders, respectively.

## II.

We initially must consider the existence of appellate jurisdiction sua sponte. *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1336 (4th Cir. 1993). Generally, our jurisdiction extends to "final decisions" of the district courts, as well as certain types of interlocutory decisions that are rendered immediately appealable by the district court's certification order, by a specific form of statutory authorization, or under the "collateral order" doctrine. *See* 28 U.S.C.A. §§ 1291, 1292 (West 2000); Fed. R. Civ. P. 23(f); *Cohen v. Beneficial Industr. Loan Corp.*, 337 U.S. 541, 546 (1949) (explaining the "collateral order" doctrine); *Technosteel, LLC v. Beers Constr. Co.*, 271 F.3d 151, 154 (4th Cir. 2001) (cataloging the bases of appellate jurisdiction).

---

[6]Shortly following this decision, on September 22, 2000, D'Elegance allegedly assigned its rights against Universal to VLP.

## A. *THE MARCH 16, 2001 ORDER*

D'Elegance, in appeal No. 01-1509, seeks to appeal the district court's March 16, 2001 order that the funds due in the Bond Case be paid into the Office of the Clerk of the Court pending final resolution of Malaco's claims. Universal, the party actually ordered to pay the funds and the only other party in appeal No. 01-1509, takes no position regarding the propriety of the requirement that it pay the funds into the Clerk's Office and does not cross-appeal the district court's entry of partial summary judgment in D'Elegance's favor in the Bond Case. Universal's only contention on appeal is that, regardless of who is entitled to the funds that Universal has paid into the Clerk's Office at the district court's direction, Universal has fully discharged its obligations under the district court's judgment in the Bond Case. D'Elegance does not contend otherwise. As between D'Elegance and Universal, the only parties to the Bond Case, there is presently no dispute for this court to adjudicate. Insofar as D'Elegance seeks to challenge the requirement that Universal pay funds into the Clerk's Office, that challenge is, in substance, addressed to a controversy between D'Elegance and Malaco regarding the payment of D'Elegance's judgment debt in the Debris Case.

As between D'Elegance and Malaco, the district court's March 16 order requiring that the Bond Case proceeds be paid into the Clerk's Office does not finally resolve the question of what party or parties are entitled to the funds. Instead, the district court seeks to hold the funds pending a resolution of the question of entitlement to them. In other words, the March 16 order, while nominally entered in the Bond Case, is in fact a temporary and intermediate measure directed towards the resolution of issues that have not been finally adjudicated in the supplemental proceedings stemming from the judgment in the Debris Case. The district court's preliminary decision thus constitutes a classic interlocutory order incident to sound case management that is not "final" under 28 U.S.C.A. § 1291 and that we are without jurisdiction to disturb.[7] *Technosteel*, 271 F.3d at 154 (explaining that,

---

[7]Even if the district court's order requiring that funds be paid into the Clerk's Office were "final," it is far from clear that D'Elegance is a proper party to challenge it, as Appellants both contend that D'Elegance has assigned its entire interest in Universal's payment in the Bond Case to VLP.

subject to certain exceptions not relevant here, appellate jurisdiction is limited to final orders).

## B. *THE MARCH 21, 2001 ORDER*

Appellants next contend that the district court erred in entering, on March 21, 2001, an order barring Appellants from disposing of or interfering with any "property of D'Elegance not exempt from execution in this case pending final ruling on [Malaco's] Motion for Supplemental Proceedings." (No. 01-1509 J.A. at 291.) We have jurisdiction to review the district court's interlocutory order granting the injunction. *See* 28 U.S.C.A. § 1292(a)(1). Appellants argue (1) that no injunction was warranted because Malaco is not entitled to supplemental proceedings;[8] (2) that the injunction is void because the district court failed to comply with the requirements of Federal Rule of Civil Procedure 65; and (3) that the injunction is overbroad. We review the district court's entry of an injunction for abuse of discretion, but to the extent that pure questions of law determine the propriety of an injunction, our review is de novo. *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191 (4th Cir. 2002).

### 1. *The Propriety of Supplemental Proceedings*

Appellants argue that Malaco did not meet the prerequisites under North Carolina law for the initiation of supplemental proceedings. Federal Rule of Civil Procedure 69 provides that:

Process to enforce a judgment for the payment of money

---

[8]We have jurisdiction to review this question because, at the threshold, if Malaco was not entitled to initiate supplemental proceedings, the district court's injunction, entered pursuant to those proceedings, cannot stand. Thus, the question of whether Malaco met the basic prerequisites for the initiation of supplemental proceedings is "intimately bound up with" the grant of the injunction. *Nationsbank Corp. v. Herman*, 174 F.3d 424, 427 (4th Cir. 1999) (holding that jurisdiction over denial of summary judgment was appropriate where issue of exhaustion of administrative remedies was "intimately bound up with" propriety of a preliminary injunction).

shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Thus, North Carolina law generally governs the procedure for supplementary proceedings in this case. The initiation of supplemental proceedings in North Carolina is governed by N.C. Gen. Stat. § 1-352, which provides:

When an execution against property of a judgment debtor . . . issued to the sheriff of the county where he resides or has a place of business, or if he does not reside in the State, to the sheriff of the county where a judgment roll or a transcript of a judgment is filed, is returned wholly or partially unsatisfied, the judgment creditor at any time after the return . . . is entitled to an order from the court . . . requiring such debtor to appear and answer concerning his property . . . .

Appellants first contend that Malaco lacks a judgment in its favor and thus, that D'Elegance is not a "judgment debtor" against whom supplemental proceedings are permitted. This argument fails because in the Debris Case, the district court entered judgment against D'Elegance, and this Court affirmed that judgment in part and reversed in part, but we did not remand. *D'Elegance I*, at *9. Indeed, in D'Elegance's appeal of the district court's judgment in the Debris Case, we specifically affirmed the registration of the judgment in Florida. Thus this court consistently has recognized the finality of the judgment against Appellants.

Appellants next argue that supplemental proceedings are unavailable to Malaco because Malaco has not adequately attempted to avail itself of execution procedures. Supplemental proceedings are not available under North Carolina law until an execution is attempted and is unsuccessful in whole or in part. *FDIC v. British-American Corp.*, 726 F. Supp. 622, 631 (E.D.N.C. 1989). Appellants contend

that Malaco's unsuccessful attempt to execute the judgment in the Southern District of Florida was an insufficient predicate for supplemental proceedings in North Carolina, because only the court that ordered execution of the judgment may initiate supplemental proceedings under North Carolina law. *North Carolina Nat'l Bank v. C.P. Robinson Co.*, 352 S.E.2d 684, 687 (N.C. 1987). We are mindful, however, that under Rule 69, "any aspects of the assimilated practices and procedures that are uniquely designed to enforce *state* judgments are not assimilated, nor is any aspect that may be inconsistent with the federal policy of affording judgment creditors the right to a writ of execution to enforce money judgments in federal courts." *United States for the use and benefit of Global Bldg. Supply v. Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir. 1995). Because "state procedure was designed for state courts, not federal," it may be necessary to employ hybrid procedures in Rule 69 cases. *Travelers Indemn. Co. v. Hash Mgmt., Inc.*, 173 F.R.D. 150, 153-54 (M.D.N.C. 1997). North Carolina state venue rules cannot govern the enforcement in federal court of federal judgments where a debtor's property is located in a state other than the one in which the judgment was rendered. Consequently, Appellants are incorrect; North Carolina law, as assimilated by Rule 69, does not require that supplemental proceedings in this case be conducted by a federal court in Florida. When Malaco's writ of execution was returned unsatisfied from the Southern District of Florida, Malaco had a "writ of execution . . . returned wholly or partially unsatisfied," as is required by N.C. Gen. Stat. § 1-352.[9]

D'Elegance next argues that Malaco must docket its federal judgment in the North Carolina state courts in order to obtain supplemental proceedings in the district court. The basis for this argument is N.C. Gen. Stat. § 1-237, which accords to properly docketed federal judgments the force and effect of a lien under state law. D'Elegance then argues that under N.C. Gen. Stat. § 1-313(1), Malaco may not execute against property until the appropriate North Carolina sheriff has levied upon that property. D'Elegance's argument, however,

---

[9]Because the writ of execution was served in Florida, and Malaco registered its judgment in the Southern District of Florida, D'Elegance's argument that the docketing of a federal judgment in North Carolina state court is a prerequisite to execution in North Carolina does not impair the validity of Malaco's attempt to execute in Florida.

would produce results that are, to say the least, idiosyncratic. In this case, the only property in North Carolina which is subject to the judgment appears to be Universal's surety payment, which has been placed in the custody of the Clerk's Office of the district court. D'Elegance would have Malaco docket a federal judgment in state court for the purpose of causing a state sheriff to levy upon funds held by the clerk of the federal court that rendered the judgment, as a prerequisite to allowing the federal court to determine the entitlement to those funds. The circularity of this procedure is evident, and it is clear that § 1-237 and related provisions apply when enforcement of a federal judgment is sought *in state court*. Similarly, § 1-352's requirement that a writ of execution against a non-resident be issued to the "sheriff of the county where a judgment roll or transcript of a judgment is filed," is logically inapplicable here, because a federal judgment need not be filed in state court to confer on the federal court jurisdiction to determine the entitlement to funds paid into the clerk's office of the district court pursuant to the federal judgment.

Malaco has established the prerequisites to initiate supplemental proceedings under Federal Rule of Civil Procedure; it has complied with the applicable requirements of North Carolina law by showing that it registered its judgment in the Southern District of Florida, that it attempted to execute the judgment in that district, and that the writ of execution was returned unsatisfied. Consequently, the basic predicate for the district court's injunction — the propriety of supplemental proceedings — has been established.[10]

---

[10]Appellants contend, further, that supplemental proceedings are improper because VLP has a valid priority lien on Universal's payment in the Bond Case. This contention goes to the ultimate disposition of property in the supplemental proceedings; yet to date, the district court has taken no reviewable, final action other than the entry of the injunction against asset transfers. Because the district court has not finally determined anyone's entitlement to any property, we restrict our consideration to the propriety of *initiating* supplemental proceedings — a necessary predicate to the reviewable injunction — and will not address the course of the proceedings except insofar as the injunction is implicated. Similarly, VLP cannot obtain review of the district court's refusal, in its July 3 order, to allow it to file a lien against the Universal payment, because the basic issue is whether Malaco is entitled to the funds, or

### 2. *The Propriety of Injunctive Relief*

Appellants next argue that the district court's injunction against asset transfers, in its March 21 order, is invalid because it fails to comply with the requirements for the entry of a preliminary injunction. In general, a district court is required to balance the likelihood and degree of irreparable injury to each party and determine the likelihood of success on the merits before granting a preliminary injunction. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977). Further, legal remedies must ordinarily be inadequate to permit the award of equitable relief, and Federal Rule of Civil Procedure 65(c) requires a party seeking a preliminary injunction to post a bond "in such sum as the court deems proper." Appellants argue that the district court was required to find that the balance of irreparable injury favored Malaco before granting an injunction barring Appellants from engaging in transfers of non-exempt assets. Appellants argue that the district court's injunction harms D'Elegance's ability to operate as a viable, ongoing business concern, as well as D'Elegance's ability to pay its attorneys, and thus, that the balance of hardships favors Appellants. Appellants further argue that Malaco has not shown that legal remedies are inadequate and has not posted a bond as is required by Rule 65. We review the district court's grant of injunctive relief for abuse of discretion. *Kimberlynn Creek*, 276 F.3d at 191. North Carolina law, rendered applicable here by Rule 69, provides that "[t]he court or judge may, by order, forbid a transfer or other disposition of, or any interference with, the property of a judgment debtor not exempt from execution." N.C. Gen. Stat. § 1-358 (1999).

---

whether, instead, VLP, on either a lien theory or an assignment theory, is entitled to the funds. There is no reason why the denial of VLP's attempt to file a Notice of Charging Lien cannot effectively be reviewed on appeal from a determination of which party is entitled to the Universal funds, and accordingly we find no reason to review the validity of VLP's asserted charging lien at this stage. *Cf. United States v. Lawrence*, 201 F.3d 536, 537 (4th Cir. 2000) (holding that the collateral order doctrine allows appellate jurisdiction for an interlocutory appeal of an order made during the course of litigation that is "related to matters outside the stream of the main action and would not be subject to effective review as part of the final judgment in the action." (citation omitted)).

At the outset, we must address the interaction of Rule 69, which authorizes supplemental proceedings in accordance with the practice of the relevant state, and Rule 65 and related requirements for the entry of injunctive relief by the district courts. Appellants argue that Rule 65 requires Malaco to post a bond in order to obtain injunctive relief in a supplemental proceeding. We reject this contention because it is undercut by Federal Rule of Civil Procedure 62, which provides that a stay of execution *pending appeal* requires the *appellant* to post a bond. It would be a strange outcome if, before it lost the prior appeal, D'Elegance was required to post a bond to avoid execution of the judgment, but after the judgment against D'Elegance on the merits survived all available appeals and D'Elegance failed to pay it, Malaco became obligated to post a bond in order to pursue supplemental proceedings. A party seeking a preliminary injunction prior to the final adjudication of liability must post a bond in order to ensure a source of recovery in the event that the injunction is erroneous. Once there is a judgment (in this case, a judgment that has survived all available appeals), however, the party seeking enforcement of the judgment need not post security to obtain satisfaction of its rights under the court's judgment.

Similarly, findings regarding the balance of irreparable harm and the likelihood of success on the merits are not required here. Under Rule 69, only if North Carolina courts required findings regarding the likelihood of success on the merits and the balance or irreparable injury would such findings be a prerequisite to the entry of the order in this case. *United Int'l Holdings, Inc. v. Wharf Holdings Ltd.*, 210 F.3d 1207, 1356 (10th Cir. 2000) ("Wharf argues the turnover order was in effect a mandatory injunction entered by the court without making the factual findings that are a prerequisite to a grant of injunctive relief. Under the plain language of [Rule 69], such factual findings are necessary only if compelled by . . . a federal statute or the applicable state rules for execution of judgments."). North Carolina's articulation of the substantive standards for an order freezing assets in supplemental proceedings is not an aspect of North Carolina law that is unique to proceedings in state court. Thus, under Rule 69, North Carolina law governs the question of whether the district court must make findings regarding the balance of irreparable harm and the likelihood of success on the merits. *Id.*; *cf. Global Bldg. Supply*, 45 F.3d at 833 (aspects of state procedures that are uniquely designed to

enforce state judgments are not assimilated under Rule 69). Appellants cite no authority indicating that North Carolina requires such findings, and no federal statute operates to require them in this context. Here, Malaco has a final judgment; it is thus conclusively established that D'Elegance is liable to Malaco, and it is uncontested that this judgment is as yet unsatisfied. If the "merits" are framed as Malaco's entitlement to satisfaction of its judgment from D'Elegance's non-exempt assets, such entitlement is a necessary implication of D'Elegance having a fully adjudicated and unsatisfied judgment debt to Malaco, and any irreparable injury stems from D'Elegance's adjudicated liability and nonpayment of that liability.[11] It would be inapposite to require a judgment creditor to make some special showing of hardship to achieve collection of a valid judgment.

### 3. *The Breadth of the Injunction*

D'Elegance next argues that the "trial court erred in extending a blanket injunction as to restraint of *future* transfers and dispositions in a supplemental proceeding." (No. 01-1553, Appellant's Br. at 47.) As noted above, under § 1-358 a court may forbid transfers of a judgment debtor's property. D'Elegance argues that the injunction is overbroad because it applies to future assets. (No. 01-1553, Appellant's Br. at 46.) The district court's order, however, only applies to property that is not exempt from execution under North Carolina law (non-exempt property). Under North Carolina law, future earnings are exempt from execution. *See Jacobi-Lewis Co. v. Charco Enterprises*, 466 S.E.2d 338, 339 (N.C. App. 1996) (citing *Harris v. Hinson*, 360 S.E.2d 118,120 (N.C. App. 1987)). In other words, "future earnings, wages or salaries to become due, or which become due after service of the order for examination," *Motor Finance v. Putnam*, 50 S.E.2d 670, 671 (N.C. 1948) (citation omitted), are exempt from execution and therefore not affected by the district court's injunction. The North

---

[11]If D'Elegance's non-exempt assets are insufficient to pay its judgment debt, it cannot suffer irreparable injury by virtue of having assets temporarily frozen which represent less than the amount of assets that it is obligated to pay outright to Malaco. If, on the other hand, D'Elegance's non-exempt assets exceed its debt to Malaco, it has a remedy readily at hand for any harm caused by impairment of its right to transfer non-exempt assets: it can pay its judgment debt.

Carolina Court of Appeals, however, has suggested that while future earnings are exempt from supplemental proceedings, other subsequently acquired property may be non-exempt. *See Harris*, 360 S.E.2d at 121.

## III.

In conclusion, we find that we have jurisdiction to review the district court's March 21, 2001 order prohibiting transfers of non-exempt assets and that we have jurisdiction to review the question of Malaco's threshold entitlement to supplemental proceedings, as the propriety of the March 21 order is intimately bound up with the question of whether supplemental proceedings are warranted. We hold that Malaco is entitled to supplemental proceedings, that the injunction meets the requirements of Rule 69, and that the injunction is not overbroad. We find that we lack jurisdiction to review the district court's March 16, 2001 order requiring Universal to make its payment in the Bond Case into the Clerk's Office or the district court's July 3, 2001 order denying VLP's motion to file a Notice of Charging Lien, as neither order is final or reviewable. Accordingly, we affirm the district court's entry of injunctive relief in appeals No. 01-1553 and 01-1576, dismiss appeal No. 01-2043 for lack of jurisdiction, affirm the district court's judgment in appeal No. 01-1509 as between Universal and D'Elegance, and dismiss for lack of jurisdiction D'Elegance's challenge to the district court's order that funds be paid into the Clerk's Office rather than directly to D'Elegance in appeal No. 01-1509.

No. 01-1553 - *AFFIRMED IN PART AND DISMISSED IN PART*

No. 01-1509 - *AFFIRMED IN PART AND DISMISSED IN PART*

No. 01-1576 - *AFFIRMED IN PART AND DISMISSED IN PART*

No. 01-2043 - *DISMISSED*