This is a caveat filed to the will of J. M. Fowler, and was before the Court in a former appeal, 156 N.C. 340. The real question in the case is whether the execution of the will was procured by fraud or undue influence. The court submitted two issues, which with the answers thereto, are as follows:
1. Is the paper-writing here offered, and every part thereof, the last will and testament of James M. Fowler, deceased? Answer: Yes.
2. If the paper-writing was the last will and testament of J.M. Fowler, was it obtained by undue influence or fraud? Answer: No.
Upon the verdict for the propounders, the court entered a judgment establishing the will. The caveators excepted and appealed, and assign the following errors:
1. That his Honor erred in submitting the second issue of record, as appears in caveators' first exception.
2. That his Honor erred in excluding from the evidence the testimony of Rena Jackson, as offered by the caveators, as set forth in caveators' second exception.
3. That his Honor erred in charging the jury that there was no evidence of undue influence or fraud, and in his charge on the second issue, as set forth in caveators' third exception.
The other assignments were merely formal.
Upon the question whether there was any evidence of undue (205) influence, we make these extracts from the testimony:
Will Smith, a witness for caveators, testified: "I saw testator several times before he died, the last of February, 1910. He told me that he had something to tell me, and said that he had made his will and willed to all his children an equal share, and to his grandchildren one-half share. He told me that he was perfectly satisfied with his will. Later I saw him again, and he told me that he had made his will and was perfectly satisfied, as he had made it as his heart desired, but that he was being aggravated mighty bad over it; that some of them were not satisfied, and said that some of them wanted all of his property and let the rest get nothing. I went up there again on Sunday morning, about ten days before he died. He said: `I have something to tell you, if I can get a chance. You know I made my last will, and made it to my heart's desire. I have been aggravated and provoked to do what I didn't want to do. I am sorry, but I can't help it now; I have changed my will, but not as I desired. I was forced to do it; I can't help it now.' He burst out crying, and said he had to do it or be thrown in the road. He was living in Mr. J.P. Jackson's house. He said: `You know who paid for the building of this house and who paid for the work and labor *Page 166 
on this house. It is hard to be threatened to be thrown into the road; that has caused me to do what I have done.' I was there on Monday night, and he died Tuesday."
Edna Fowler, a witness for the caveators, testified: "I know the day that Mr. Fowler made his first will. I was down there. He told me he had willed all of his children an equal share and his grandchildren one-half share each. He said: `I have done as well as I could and to my heart's desire.' About two weeks after that, I went to see him. He was crying. He told me that he bought that mantelpiece and paid for it, and bought his pump and paid for it out of his own pocket, and said: `I paid for the sawing of the lumber in this house. I paid for every day's work on it out of my own money. It is pretty hard, don't you think, for me to do that much for one of my children and for him to threaten to throw me out in the road, and my wife in the (206) condition she is in?' His wife was in a perfectly helpless condition. Two or three days after that I was down there again. He was crying, grieving very bad, and said he was feeling very bad. He said: `My troubles are more than my afflictions.' I asked him what he was troubled about. He replied: `If J. P. Jackson and Forest Barnes don't quit harassing and tormenting me about my will I shall lay it in the fire and burn it up, and what is left after my death can be divided by law.'"
The caveators introduced a witness, Rena Jackson, a granddaughter of the testator, who testified to declarations of the testator which were made after the execution of the paper, tending to show that it had been procured by undue influence. This witness was a devisee under the will to which the caveat was filed, and it is admitted that she will receive less as an heir, if the will is set aside, than she would if it is sustained. It also appears that the testator had made a prior will, and if the caveators succeed in this case that will would be unrevoked if it had not been canceled. We infer from the admission and the facts stated in the case that it was canceled or destroyed. It does not appear that she was a beneficiary under that will. The court excluded the testimony of Rena Jackson and charged the jury that there was no evidence of undue influence, and that they should answer the second issue "No." The caveators excepted and appealed.
The ruling of the court by which the testimony of Rena Jackson was excluded was erroneous. Her interests will be adversely affected by the result of this proceeding if the will is set aside. She *Page 167 
testified against her own interest, and in In re Worth's Will, 129 N.C. 223, it was held that by reason thereof she is not disqualified by Revisal, sec. 163 (Code, sec. 590), to testify, as the prohibition of the statute only extends to those cases in which the witness testifies in her own behalf or interest, which clause was not in the original section 343 of the Code of Civil Procedure, but is in The Code, sec. 590, and Revisal, sec. 1631. The case, therefore, in this respect, is (207) not governed by Linebarger v. Linebarger, 143 N.C. 229, and Hathaway v. Hathaway, 91 N.C. 139. In those cases it was held that it was incompetent to prove by an interested party, under Code, sec. 590 (Revisal, sec. 1631), declarations of the testator made after the execution of the paper, for the purpose of showing that it was obtained by fraud or undue influence. It was not decided whether evidence from a competent witness would be admissible to show such declarations, though it was held in the Linebarger case that prior or contemporaneous declarations, proven by such a witness, would be admissible. But such declarations — that is, those subsequent to the execution of the will — were held to be competent in Howell v. Barden, 14 N.C. 442, in able and exhaustive opinions byChief Justice Henderson and Judge Ruffin, and the decision was approved in Simms v. Simms, 27 N.C. 684. In the last, Chief Justice Ruffin
said: "It must, of necessity, in every case be inquired whether the paper be the will of the party deceased; whether he had capacity to make a will, and meant to dispose of his estate by the particular script propounded. Such is the law even as to attested wills; for it is competent to show, by subsequent declarations of the supposed testator, that he never
assented to the instrument as his will, but that it was obtained by duress or fraud." The Howell case holds it to be competent to show, by subsequent declarations of the testator, that he did not have a disposing mind or a free will, as that the will was obtained by "fraud, duress, or undue influence" — in other words, that his free agency was destroyed. When the witness, by whom it is proposed to prove the declarations, has an adverse interest to be subserved, it is not material to inquire as to the extent of that interest. Campbell v. Everhart,139 N.C. 503. But Rena Jackson testified against her own interest, according to the admission. A witness, though interested, may testify as to the state of the testator's mind, his sanity, or even his mental capacity or condition, and may prove his acts and declarations for the purpose of showing the basis of his opinion in regard thereto. This was expressly held in McLeary v. Norment, 84 N.C. 235.
We think the court erred in charging the jury that there was no evidence of undue influence, even if Rena Jackson's testimony is excluded. There was evidence that the testator was 74 years (208) *Page 168 
old and was sick and very feeble; that those in whose favor he made the second will were the only persons present when the will was executed, except the witnesses. His wife was in a perfectly helpless condition. There was much evidence to show undue influence besides that contained in the extracts we have made from the case; but what there appears is sufficient, if accepted as true, to show his depressed mental condition, and that he was under some dominating influence, from which he could not rid himself. J. P. Jackson and Forest Barnes were his sons-in-law, and he was living with Jackson, and there is evidence tending to show that he was under his controlling influence and unable to resist it. Jackson was heard by one of the witnesses to say to him: "Mr. Fowler, if I were in your place, I would make my will over again; it is not like it ought to be; I would make another and tear that up." It is, at least, probable that this old and feeble man was referring to Jackson's power over him and his own helplessness and abject submission to his will and dictation, in what he said to the witnesses Will Smith and Edna Fowler, and other witnesses who testified to the same effect. He said to the witness David Gregory: "I am mighty bad off. I have done something that has hurt me to the heart. I made my will and was forced to make another, and it is wrong." This was during the week before he died. We cannot resist the conclusion that there was sufficient evidence for the jury to consider, upon the question of the testator's mental capacity, and also of undue influence, which subjected him as a helpless and unresisting victim to the overmastering will of another. Linebargerv. Linebarger, supra, and Lee v. Williams, 111 N.C. 200, relied on by the learned judge, are not authorities against our conclusion. There was no such evidence in those cases as we have in this. The facts disclosed by this record, if found by the jury, are clearly sufficient to establish that an undue, and therefore fraudulent, influence was exercised over this man, enfeebled by old age and bad health, and without the aid of those who could give him disinterested counsel and advice. Amis
(209) v. Satterfield, 40 N.C. 173; McRae v. Malloy, 93 N.C. 154. The relation between these parties, of control on the one hand and dependence on the other, made the task of overcoming and destroying his volition and free agency an easy one. The evidence was fit to be submitted to the jury. Using the language of Judge Henderson inHowell v. Barden, supra: "It is not for me to say how much such evidence ought to weigh, having, as I have elsewhere observed, no weights and measures for my own mind. It must, under the circumstances of each case, be left to the judgment and discretion of the jury, as rational men; if they believe it, they will give it effect; if they do not believe it, of course they will pay no attention to it." *Page 169 
It was not necessary to submit the second issue, as the questions of mental capacity and fraud or undue influence can be tried and determined under the usual issue in such cases, that is, the first issue in this case.
There was error in the ruling and charge of the court.
New trial.
Cited: In re Patrick, 162 N.C. 520; In re Parker, 165 N.C. 132.