IN THE MATTER OF THE PURPORTED LAST WILL AND TESTAMENT OF FRANCIS
M. BARNES, DATED NOVEMBER 22, 1989 AND IN THE MATTER OF THE PUR-
PORTED LAST WILL AND TESTAMENT OF FRANCIS M. BARNES, DATED MAY
25, 1967

No. COA01-1437

(Filed 15 April 2003)

**1. Wills— caveat—Dead Man's Statute—revocation of will**

The trial court did not abuse its discretion in a will caveat
proceeding by concluding that a witness's testimony on the
ultimate issue of the revocation of decedent's 1967 will was
not barred by the Dead Man's Statute, because the witness's
testimony was inherently admissible since it was against her
pecuniary interest when she knew she would take twenty
percent under the 1967 will but only ten percent under the
1989 will.

**2. Appeal and Error— preservation of issues—failure to
object—failure to present issue at trial—failure to make
offer of proof**

Although the 1967 will beneficiaries contend that the trial
court erred in a will caveat proceeding by excluding evidence
related to a testamentary trust created under decedent's 1989
will, this assignment of error was not preserved for appellate
review, because: (1) there is evidence of neither an objection nor
that the 1967 beneficiaries ever presented this issue to the trial
court; and (2) the 1967 beneficiaries failed to preserve the issue
by making an offer of proof as required by N.C.G.S. § 8C-1, Rule
103(a)(2), and the substance of the evidence is not apparent from
the context within which the questions were asked.

**3. Wills— caveat—standing—copy of will**

The trial court erred in a will caveat proceeding by permit-
ting the 1967 will beneficiaries to proceed against a 1989 will
without first rebutting the presumption that they lacked stand-
ing to caveat attendant to their production of a mere copy of
the 1967 will.

**4. Wills— caveat—rights of heirs-at-law**

The trial court erred in a will caveat proceeding by failing
to dismiss under N.C.G.S. § 31-33 decedent's heirs-at-law from
the proceeding, because the heirs-at-law neither aligned them-

**IN RE WILL OF BARNES**

[157 N.C. App. 144 (2003)]

selves as parties nor did they timely file a caveat against decedent's 1989 will.

Judge HUDSON concurring in part and dissenting in part.

Appeal by Propounders of the 1989 Will of Francis M. Barnes; Caveators-Beneficiaries of 1967 Will of Francis M. Barnes; and State of North. Carolina, from judgment entered 9 March 2001 by Judge John B. Lewis, Jr. in Superior Court, Martin County. Heard in the Court of Appeals 31 October 2002.

*Bass, Bryant & Fanney, by John Walter Bryant, and Batts, Batts, & Bell, LLP, by Jeffrey A. Batts, Joseph L. Bell, Jr., and Wendy P. Wilson, for Propounders of 1989 Will of Estate of Francis M. Barnes, appellant-appellee.*

*Poyner & Spruill, LLP, by Nancy Bentson Essex and Gregory S. Camp, for Church of the Advent (aligned Propounder of 1989 Will of Estate of Francis M. Barnes), appellant-appellee.*

*The Blount Law Firm, PLLC, by Marvin K. Blount, Jr., Ted E. Mackall, Stephen J. Batten, for Caveators to 1989 Will of Francis M. Barnes/Beneficiaries of 1967 Will of Francis M. Barnes, appellee-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Charles J. Murray, for the State of North Carolina, appellee-appellant.*

*Gaylord, McNally, Strickland, Snyder, & Holscher, LLP, by Danny D. McNally, Emma S. Holscher, and Browning & Hill, LLP, by Myron T. Hill, Jr., and Emmanuel & Dunn, by Stephen A. Dunn, and Dunn & Dunn, by Raymond E. Dunn, for Heirs-at-law to Estate of Francis M. Barnes, appellees.*

WYNN, Judge.

This appeal arises from a jury determination that two wills purportedly executed by Francis M. Barnes were invalid, thus resulting in a determination that Mr. Barnes died intestate leaving his estate valued at over $24 million to his heirs-at-law. Following the presentation of a will executed by Francis M. Barnes in 1989 ("the 1989 Will)[1]

---

1. In the 1989 Will, Mr. Barnes devised $10,000 to his wife, Lucille Barnes; $10,000 to St. Labre School for Indians; and established the Francis M. Barnes Trust. Mr. Barnes devised the net income of the trust: (1) $500,000 to his wife, Lucille, for life; (2) forty percent to the Francis M. Barnes Memorial Trust for college scholarships "for the

and issuance of testamentary letters by the Clerk of the Superior Court, Martin County, the beneficiaries under a copy of a will executed by Mr. Barnes in 1967 ("the 1967 Will")[2] filed a caveat against the 1989 Will.

After several days of trial, the jury agreed with the caveators ("the 1967 Will Beneficiaries") that the 1989 Will had been procured by undue influence; however, the jury gave the 1967 Will Beneficiaries a short-lived victory by further finding that the 1967 Will had been revoked by Mr. Barnes. Both parties appeal; furthermore, the heirs-at-law to the Estate of Francis M. Barnes join in this appeal in support of both verdicts of the jury.

After carefully reviewing this appeal, we hold that the trial court erred by permitting the 1967 Will Beneficiaries to proceed against the 1989 Will without first rebutting the presumption that they lacked standing to caveat attendant to their production of a mere copy of the 1967 Will. For the reasons stated herein, we vacate the judgment of the trial court and remand this matter for entry of judgment in favor of the propounders of the 1989 Will ("the 1989 Will Propounders").[3]

## I. Facts and Procedural Posture

The underlying facts show that Mr. Barnes died on 17 October 1996; thereafter, a will, dated 22 November 1989, was offered for probate with testamentary letters issued on 30 November 1996. On 17

---

deserving people of Martin County"; (3) thirty percent to charitable organizations or purposes, with at least $10,000 for ten years to the East Carolina University School of Medicine; and (4) a ten percent, ten year, interest to: Charley Anne Peele Hopkins, The Church of the Advent, and equally divided among Hugh, Frances, and Arthur Long.

2. In the 1967 Will, Mr. Barnes left his wife, Lucille Barnes, $7,000 and created the Francis Barnes Trust. Under the trust, he bequeathed the net income on $400,000 of the trust to Mrs. Barnes for life, the net income on $100,000 to Charles, Mary, and Charley Anne Peele for ten years, and divided the remainder equally to: (1) Mary and Monte Toler, (2) Caveator Rebecca Boyd, (3) Caveators John Hunter and Alethia Dailey, (4) Caveator W.B. Long, and (5) Hugh, Frances and Arthur Long for ten years.

If any of these shares lapsed, however, the 1967 Will automatically shifted the lapsed shares to a second trust: The Francis M. Barnes Memorial Trust. Assuming shares lapsed, Mr. Barnes devised: (1) forty percent of the net income to East Carolina University "for the purpose of providing athletic scholarships for white football players," and (2) sixty percent of the net income "for the purpose of providing scholarships for needy and competent white children of Martin County."

3. Throughout the proceeding, the heirs-at-law to the Estate of Francis M. Barnes neither aligned themselves with the parties to the action nor did they file a caveat to the validity of either will. *Infra*, we address the potential standing of the heirs-at-law on remand.

September 1998, the beneficiaries to a will, executed on 25 May 1967, offered a copy of the 1967 Will and sought to file a caveat against the 1989 Will. On 12 July 1999, the Clerk of the Superior Court, Martin County, gave notice of the caveat proceeding to all interested parties under the 1989 and 1967 Wills pursuant to N.C. Gen. Stat. § 31-33 (2002). In July 1999, the Athletic Fund of East Carolina University aligned itself with the Propounders of the 1967 Will, and The Church of the Advent aligned itself with the Propounders of the 1989 Will.

On 4 August 2000, Superior Court Judge Jerry Tillet ordered the parties to mediate the dispute; as a result, the parties reached a preliminary settlement on 4 September 2000. Thereafter, a copy of the agreement was circulated, minor changes made, and all parties, including Judge Tillet, signed the settlement except the 1967 Will Beneficiaries. On 19 September 2000, the 1967 Will Beneficiaries fired their attorney; hired Attorney Marvin Blount as counsel; and rejected the settlement offer. In January 2001, the Chief Justice of the Supreme Court of North Carolina designated the caveat proceeding as "exceptional," and assigned the matter to special emergency Superior Court Judge John B. Lewis, Jr. Thereafter, Judge Lewis denied the 1989 Will Propounders' Motion to Enforce Settlement and set the dispute for trial.[4]

---

4. Although Propounders, Caveators, and the Intestate Heirs have been presented with at least four opportunities to settle and mediate this dispute, the parties have been unable to reconcile.

First, on 1 September 2000, the parties conducted a settlement conference in the presence of Judge Jerry R. Tillett. The parties reached a tentative agreement. On 18 September 2000, a final draft was formalized and the document was executed by Caveators' and Propounders' counsel. Although the individual Caveators remained to sign the final version of the settlement agreement, Judge Tillett conditionally accepted and signed the agreement. However, on 19 September 2000, the individual Caveators informed the court that they did not intend to sign the settlement agreement.

Second, in December 2000 and January 2001, Propounders and Caveators participated in a mediation session at the Duke Private Adjudication Center. Professor Bob Beason, a skilled mediator and a Senior Lecturing Fellow at Duke University Law School, acted as the mediator. Notwithstanding, Propounders and Caveators were unable to reach an agreement.

Third, in August 2001, after the trial, Propounders, Caveators, and the Intestate Heirs participated in a sixteen-hour mediation in Raleigh before two professional mediators: Richard Boyette and Neill McBryde. At this mediation, McBryde gave an independent appraisal of the monetary value and tax consequences attendant to each represented interest. This mediation did lead to an executed agreement between the Propounders and the Intestate Heirs, however the Propounders and Intestate Heirs were unable to reach an agreement with the Caveators.

Finally, on 31 October 2002, during oral argument before the North Carolina Court of Appeals, we informed the parties of the potential benefits of the pilot mediation pro-

**IN RE WILL OF BARNES**

[157 N.C. App. 144 (2003)]

On 23 January 2001, the Clerk of the Superior Court, Martin County, mailed a Supplemental Citation to Mr. Barnes' heirs-at-law: Lucy Tull (first cousin once removed), Riley S. Coddry (lineal descendant of Barnes' paternal aunt), and Diane Barnes Grau (lineal descendant of Barnes' paternal aunt). The Supplemental Citation gave Mr. Barnes' heirs-at-law notice of the caveat, and informed them of their statutory right to "appear and align [themselves] with the Propounder of the 1989 Will, the Caveators of [the] 1989 Will . . . or [to] identify [themselves] as a Caveator to the 1967 Will." The heirs-at-law neither aligned themselves with any of the parties to the proceeding, nor did they identify themselves as Caveators to the 1967 Will.

In pretrial motions, the 1989 Will Propounders argued, as a preliminary question of standing, that the 1967 Will Beneficiaries should have to overcome the presumption that the 1967 Will was revoked by Mr. Barnes, and, therefore, the 1967 Beneficiaries did not have standing to challenge the 1989 Will by caveat. The 1989 Will Propounders argued that "if this jury finds [that the 1967 Will] was intentionally revoked, then the [caveat proceeding should] stop[] there." The trial court, however, did not address the issue of standing, and, instead, declared that the 1967 Will Beneficiaries were clearly "interested parties" under the statute. Accordingly, the trial court bifurcated the trial and allowed the jury to first determine whether the 1989 Will was valid; if not, then the jury would secondly determine whether the 1967 Will had been revoked.

At the trial, held 29 January 2001 through 22 February 2001, the 1989 Will Propounders offered evidence that the 1989 Will was valid and attested. Joseph Thigpen testified he assisted Mr. Barnes in drafting the 1989 Will. Mr. Thigpen, and two attorneys (James Bachelor and Melvin Bowen), testified that Attorney James Bachelor who drafted the 1989 Will, read aloud each provision of the 1989 Will to Mr. Barnes and received his approval before making any changes or moving on to a subsequent provision. Moreover, all three witnesses testified that Mr. Barnes, on the day of execution, knew his property, who he wanted to have that property, and the natural objects of his bounty.

Francis Long, a longtime friend of Lucille and Francis Barnes, testified for the 1989 Will Propounders that Mr. Barnes "had a fit and

---

gram at the Court of Appeals and its potential to facilitate a non-judicial resolution of their dispute. Moreover, we informed the parties that we intended to "hold" this opinion for twenty days in order to give the parties time to use the pilot mediation program. However, like other efforts, this effort at settlement proved ineffective.

tore up the [1967] Will" in 1983 or 1984. The 1989 Will Propounders offered this testimony, over the objection of the 1967 Will Beneficiaries, to establish the chain of events leading up to the writing and drafting of the 1989 Will. The trial court rejected the 1967 Will Beneficiaries' contention that Mrs. Long's testimony was barred by North Carolina's Dead Man's Statute. Instead, the trial court held that Mrs. Long's "testimony [was] inherently admissible" because it was against her pecuniary interest since she would take twenty percent under the 1967 Will, but only ten percent under the 1989 Will.

Thus, the 1989 Will Propounders established a *prima facie* case that the 1989 Will was valid, attested, and properly in probate. To rebut the *prima facie* case of the 1989 Will's validity, the 1967 Will Beneficiaries presented evidence that Mr. Barnes was unduly influenced by Mr. Thigpen and lacked testamentary capacity. Specifically, the 1967 Will Beneficiaries elicited evidence tending to show that Mr. Thigpen occupied a fiduciary relationship with Mr. Barnes, and he substantially benefitted from the 1989 Will which he helped draft. The evidence showed that the 1989 Will named Mr. Thigpen as executor and trustee of the testamentary trust, with compensation for both positions. Moreover, Mr. Thigpen was granted complete discretion in the amount, type, and organizations to fund with the charitable contributions. In addition, the 1989 Will named Mr. Thigpen as a member of the "scholarship selection committee," and gave him the discretionary power to appoint one of the other two members of the committee. Mr. Thigpen used this discretion to appoint his son, Joel Thigpen, as the other member of the scholarship selection committee.

Accordingly, the 1967 Will Beneficiaries argued that the 1989 Will gave Mr. Thigpen *defacto* authority over a substantial portion of Mr. Barnes' multi-million dollar estate, as well as an unprecedented position of authority and power in Martin County to donate to charities of his choice, and to award scholarships to children and families of his choice. The 1967 Will Beneficiaries contended that Mr. Barnes did not bestow this power upon Mr. Thigpen independently. Rather, they argued, Mr. Thigpen took advantage of a mentally incapacitated man, and, through undue influence, created a will making him one of the most powerful individuals in Martin County.

Second, the 1967 Will Beneficiaries offered the testimony of nine witnesses who opined that Mr. Barnes lacked testamentary capacity to make the 1989 Will. For instance, John Roney, Mr. Barnes' stockbroker and close friend, testified that he had a consistent

relationship with Mr. Barnes between 1969 and 1989. Mr. Roney testified that, in his opinion, Mr. Barnes lacked mental capacity in 1989 to understand the effect of a will or the natural objects of his bounty. In support of this opinion, Mr. Roney testified he had contact with Mr. Barnes two or three times a week and, after 1980, Mr. Barnes began a process of slow mental deterioration resulting in Mrs. Barnes taking control of all important decisions related to his estate. The 1967 Will Beneficiaries also offered the expert testimony of two physicians who testified that in 1989 Mr. Barnes likely suffered from dementia.

In response to this attack on Mr. Barnes' testamentary capacity, the 1989 Will Propounders offered the testimony of seven lay witnesses; Mr. Barnes' treating physician; and one expert, who testified that on or around the day of executing the 1989 Will, Mr. Barnes knew the nature and extent of his property and the natural objects of his bounty. Dr. Michael McLeod, who was Mr. Barnes' treating physician, testified that in 1990, Mr. Barnes might have had "mild dementia but was capable of taking care of himself." To support this conclusion, Dr. McLeod testified that "even in [1990] . . . [Mr. Barnes] was able to report his general unhappiness with the fact that he had lost most of his friends through death."

After a three-week trial, evidenced by over three-thousand pages of transcript, the first phase of the trial concluded. At the charge conference, the 1989 Will Propounders again raised the question of the 1967 Will Beneficiaries' standing to caveat the 1989 Will. The 1989 Will Propounders stated:

Our position from the outset has been that the only reason they're here is because of this alleged 67' Will. And we believe the case law says that if the jury were to find first that it was revoked or destroyed with the intention to revoke it, [then the 1967 Will Beneficiaries] no longer have standing. . . . They are not heirs judge. They're not heirs. The only reason they're here is because they happened to be named in the 67' document [for] which they do not have an original.

Accordingly, the 1989 Will Propounders' proposed jury instructions which would have required the jury to answer "yes" or "no" to the preliminary question: "Did the deceased, Francis M. Barnes, destroy the purported paper writing dated May 25, 1967 with the intention of revoking it?" The trial court, however, did not adopt the 1989 Will Propounders' proposed jury instructions. Instead, the trial

court maintained the complete bifurcation, did not instruct the jury to consider the 1967 Will in the first phase, and permitted the 1989 Will to go to the jury on the issues of attestation, testamentary capacity, and undue influence.

On 22 February 2001, the jury returned a verdict regarding the 1989 Will. Although the jury found that the 1989 Will satisfied the formalities of attestation, the jury found the 1989 Will to be invalid on the grounds that Mr. Barnes lacked testamentary capacity.

Having reached the determination that the 1989 Will was invalid, the trial court next allowed the jury to consider evidence regarding whether the 1967 Will had been revoked. After an opening statement, the 1967 Will Beneficiaries presented three witnesses and a short closing argument. During this second phase of the trial, no adverse party existed, and, consequently, the evidence of the 1967 Will Beneficiaries was neither cross-examined nor rebutted. However, the jury was instructed that "all of the evidence [heard in the first phase], you may consider in [the second phase]." Accordingly, the jury was permitted to consider the testimony of Francis Long pertaining to the alleged destruction of the 1967 Will.

Following the second hearing, the jury concluded that the 1967 Will was executed according to the requirements of law, and was, therefore, a valid and attested will; however, the jury found that Mr. Barnes destroyed the 1967 Will with the intent to revoke it. Accordingly, the trial court concluded, as a matter of law, that the copy of the 1967 paper-writing was not the Last Will and Testament of Mr. Barnes.

## II. The 1967 Will

We first consider the appeal by the 1967 Will Beneficiaries from the jury's determination that the 1967 Will had been revoked. They primarily contend that the trial court committed error by denying their motion to exclude the testimony of Francis Long relating to Mr. Barnes' destruction of the 1967 Will. They argue that Francis Long was an "interested" witness and, consequently, her testimony was barred under North Carolina's Dead Man's Statute. They further contend that the trial court allowed the jury to decide the issue of revocation without the benefit of hearing relevant and admissible evidence questioning Mrs. Long's credibility, bias, and motive. Thus, the 1967 Will Beneficiaries ask this Court to remand this matter for a "new" jury finding on the question of revocation of the 1967 Will.

However, after carefully reviewing the record, we find no error in the jury's verdict.

**[1]** First, the 1967 Will Beneficiaries contend that Francis Long's testimony was barred by the Dead Man's Statute, and, therefore, the trial court committed prejudicial error by permitting the jury to consider the testimony on the "ultimate issue" of revocation. Under North Carolina's Dead Man's Statute a witness' testimony is excluded "when it appears (1) that such a witness is a party, or interested in the event, (2) that his testimony relates to . . . a communication with the deceased person, (3) that the action is against the personal representative of the deceased or a person deriving title or interest from, through or under the deceased, and (4) that the witness is testifying in his own behalf or interest." *Breedlove ex rel. Howard v. Aerotrim, U.S.A, Inc.*, 142 N.C. App. 447, 451, 543 S.E.2d 213, 216 (2001) (citing *In re Will of Lamparter*, 348 N.C. 45, 51, 497 S.E.2d 692, 695 (1998)) (quoting *Godwin v. Wachovia Bank & Trust Co.*, 259 N.C. 520, 528, 131 S.E.2d 456, 462 (1963)); *see also* N.C. Gen. Stat. § 8C-1, Rule 601(c) (2002).

Our Supreme Court has made it eminently clear that: "In caveat proceedings, in the absence of a clear exception to the Dead Man's Statute, . . . testimony as to oral communications between the decedent and a beneficiary under the purported will" is not admissible. *Will of Lamparter*, 348 N.C. at 51, 497 S.E.2d at 695. One clear exception permits a witness to testify about the oral communications between the decedent and a beneficiary when the testimony is against the pecuniary interests of that witness. *Sanderson v. Paul*, 235 N.C. 56, 69 S.E.2d 156 (1952). Accordingly, "[t]estimony which would diminish one's share would not be disqualifying under the statute." *Fender v. Fender (In re Fabian)*, 1997 S.C. App. LEXIS 39, at *9 (1997); *see also In re Fowler's Will*, 159 N.C. 203, 74 S.E. 117 (1912) [hereinafter "Fowler"] (holding that witness' testimony was admissible, where witness "[would] receive less as an heir, if the Will [was] set aside, than she [would] if it [was] sustained").

"The ruling on competency of a witness is within the trial court's discretion and its decision is not reversible except for clear abuse of discretion." *State v. Sills*, 311 N.C. 370, 377, 317 S.E.2d 379, 383 (1984). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998).

In this case, the trial court held that Francis Long's "testimony [was] inherently admissible" because it was against her pecuniary interest; Mrs. Long knew she would take twenty percent under the 1967 Will, but only ten percent under the 1989 Will. The trial court made this decision only after permitting an extended voir dire in which Mrs. Long admitted she would take twice the amount under the 1967 Will as she would inherit under the 1989 Will. An examination of both wills bears the truth of Mrs. Long's superior pecuniary interest in the 1967 Will. Moreover, the trial court's decision to permit Mrs. Long to testify was in accordance with our Supreme Court's long-standing precedents in *Fowler* and *Sanderson*. Accordingly, the trial court properly admitted Mrs. Long's testimony under an exception to the Dead Man's Statute, and, therefore, this assignment of error is without merit.

**[2]** By their next assignment of error, the 1967 Will Beneficiaries contend the trial court erred by excluding evidence related to the Testamentary Trust created under the 1989 Will, through which Francis Long and her son had already received $140,986.00. The 1967 Beneficiaries argue that, by precluding mention of the Trust, the trial court prejudicially limited their ability to cross-examine Mrs. Long exposing the bias, motive, and inherent lack of credibility to Mrs. Long's testimony. After carefully reviewing the record, we hold that this assignment of error was not properly preserved for appellate review.

Indeed, although the 1967 Will Beneficiaries argue that the trial court precluded all mention of the Trust, this assertion is not reflected in the trial transcript referenced in their assignment of error. The referenced sections in the transcript do reflect the trial court's exclusion of such evidence as it pertained to Mr. Thigpen and the 1967 Will Beneficiaries' theories of undue influence and testamentary capacity; however, the record does not reflect any discussion or trial court ruling related to the Trust and Mrs. Long's possible influence and testimony. "Our Supreme Court and this Court have held that . . . appropriate objections must be made at trial to preserve the question of admissibility of the evidence on appeal." *Morin v. Sharp*, 144 N.C. App. 369, 375, 549 S.E.2d 871, 874 (2001). Here, there is evidence of neither an objection nor that the 1967 Beneficiaries ever presented this issue to the trial court.

Moreover, the 1967 Beneficiaries failed to preserve the issue by making an offer of proof. N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) provides:

**IN RE WILL OF BARNES**

[157 N.C. App. 144 (2003)]

(a) Effect of erroneous ruling.—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . .

(2) Offer of Proof—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Here, the 1967 Beneficiaries were given a voir dire examination of Mrs. Long. Significantly, the 1967 Beneficiaries did not, at any time during the voir dire, cross-examine Mrs. Long about the money she or her son received from the trust. The 1967 Will Beneficiaries did not attempt to elicit this information during cross-examination within the presence of the jury. Accordingly, the 1967 Will Beneficiaries did not object to the trial court's exclusion or make an offer of proof. Therefore, because (1) the 1967 Will Beneficiaries "made no offer of proof to the witness' possible answers," and (2) "the substance of the [evidence is not] apparent from the context within which the questions [were] asked" (because no questions were asked), the 1967 Will Beneficiaries "failed to preserve this issue for appellate review." *State v. Braxton*, 352 N.C. 158, 208, 531 S.E.2d 428, 457 (2000).

## III. The 1989 Will

**[3]** Having determined that the trial court committed no error in entering judgment on the jury's determination that the 1967 Will had been revoked by Mr. Barnes, we now address the dispositive issue presented by the Propounders of the 1989 Will: Did the trial court err by permitting caveators, claiming an interest under a *copy* of a prior will, which under North Carolina law is presumptively revoked and invalid, to proceed against a subsequent attested will, without first rebutting the presumption of revocation and invalidity?

"Standing is a requirement that the plaintiff [has] been injured or threatened by injury or have a statutory right to institute an action." *Matter of Baby Boy Scearce*, 81 N.C. App. 531, 541, 345 S.E.2d 404, 410 (1986). " 'Standing' to sue means simply that the party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Town of Ayden v. Town of Winterville*, 143 N.C. App. 136, 140, 544 S.E.2d 821, 824 (2001) (quoting *Sierra Club v. Morton*, 405 U.S. 727 (1972)). "Standing is a jurisdictional issue[,] . . . [and] does not generally concern the ultimate

**IN RE WILL OF BARNES**

[157 N.C. App. 144 (2003)]

merits of a lawsuit." *Town of Ayden*, 143 N.C. App. at 140, 544 S.E.2d at 824 (quoting *Sierra Club*, 405 U.S. 727).

Accordingly, because standing is jurisdictional in nature, even if the alleged irregularities would, if proved, render the 1989 Will voidable by an appropriate caveator, this does not eliminate the requirement that the particular caveators in this case have standing. *Town of Ayden*, 143 N.C. App. at 140, 544 S.E.2d at 824. Consequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of case are judicially resolved. To discern whether the beneficiaries under the revoked 1967 Will had standing to caveat, we must first examine the general origin of standing to caveat articulated in our probate laws.

North Carolina statutory law provides that: "No will shall be effectual to pass real or personal estate unless it shall have been duly proved and allowed in the probate court . . ." N.C. Gen. Stat. § 31-39 (2002). "The purpose of probate is to establish that the will in question has been executed in a proper manner and that it constitutes the last will of the deceased." *North Carolina Nat. Bank v. C.P. Robinson Co., Inc.*, 319 N.C. 63, 67, 352 S.E.2d 684, 687 (1987).

After a will is submitted for probate, the "right to contest the validity of a writing offered for probate . . . is by statute . . . limited to 'any person entitled under such will, or interested in the estate.' " *In re Belvin's Will*, 261 N.C. 275, 276, 134 S.E.2d 225, 226 (1964) [hereinafter "*Belvin*"] (citing N.C. Gen. Stat. § 31-32). "An interest resting on sentiment or sympathy, or any basis other than the gain or loss of money or its equivalent, is not sufficient" to establish standing as a caveator, otherwise any person could protest a testator's disposition of property and frustrate "the freedom of testation." *In re Thompson's Will*, 178 N.C. 540, 542, 101 S.E. 107, 108 (1919). Moreover, by statute, a potential caveator has three years to file a caveat after probate. N.C. Gen. Stat. § 31-32.

"The purpose of a caveat is to determine whether the paperwriting purporting to be a will is in fact the last will and testament of the person for whom it is propounded." *In re Spinks*, 7 N.C. App. 417, 423, 173 S.E.2d 1, 5 (1970). "An attack upon a will offered for probate must be direct and by caveat; a collateral attack is not permitted." *Baars v. Campbell University, Inc.*, 148 N.C. App. 408, 419, 558 S.E.2d 871, 878 (2002); *see also In re Will of Charles*, 263 N.C. 411, 415, 139 S.E.2d 588, 591 (1965); *Johnson v. Stevenson*, 269 N.C. 200, 202, 152 S.E.2d 214, 216 (1967); *Casstevens v. Wagoner*, 99 N.C. App.

337, 338, 392 S.E.2d 776, 778 (1990). The right to contest a will by caveat is statutory and in derogation of the common law; accordingly, the section authorizing caveats must be strictly construed. *In re Will of Winborne*, 231 N.C. 463, 466, 57 S.E.2d 795, 799 (1950).

In North Carolina, our courts have generally recognized three fundamental classes of individuals that have standing as caveators based on their interest in the estate: "heirs-at-law, the next of kin, and persons claiming under a prior will." James B. McLaughlin, Jr., and Richard T. Bowser, *Wiggins* Wills and Administration of Estates in North Carolina § 124 (2000); *see e.g., Sigmund Sternberger Foundation, Inc. v. Tannenbaum*, 273 N.C. 658, 674, 161 S.E.2d 116, ·127 (1968) (persons claiming under a prior will); *Brissie v. Craig*, 232 N.C. 701, 705, 62 S.E.2d 330, 333 (1950) (heirs-at-law); *Randolph v. Hughes*, 89 N.C. 428, 1883 WL 2544, *2 (1883) (next of kin). For many years, the case law in North Carolina did not address whether beneficiaries under a prior will had standing as caveators if they were not related by blood or marriage to the testator. However, in *Belvin* and *Tannenbaum*, our Supreme Court clarified this ambiguity by holding that "beneficiaries under a prior paper writing are persons interested . . . and are entitled to file a caveat to a subsequent instrument probated in common form, notwithstanding they are not heirs of the deceased." *Tannenbaum*, 273 N.C. at 674, 161 S.E.2d at 127; *see also Belvin*, 261 N.C. at 276-77, 134 S.E.2d at 226-27.

Here, the 1967 Will Beneficiaries were neither the heirs-at-law nor the next of kin of Mr. Barnes. Rather, the 1967 Will Beneficiaries ·claimed standing as persons benefitting under a prior will; thus, they claimed standing as caveators under the reasoning in *Tannenbaum* and *Belvin*. Moreover, the 1967 Beneficiaries rely on our reasoning in *In re Will of Hester*, 84 N.C. App. 585, 353 S.E.2d 643 (1987) [hereinafter "*Hester*"], *rev'd on other grounds*, 320 N.C. 738, 360 S.E.2d 801 (1987), to support the claim that they had standing to challenge the 1989 Will as caveators. In *Hester*, we noted and held that:

Propounders contend that '[a] beneficiary under a prior will does have standing to caveat a will but such a beneficiary must, in the same proceeding, prove the interest alleged.' We disagree. . . . Here, . . . the caveators alleged the probated will was invalid on grounds of undue influence and lack of mental capacity and alleged that they are beneficiaries under a will of the deceased made at a time when the testator possessed mental capacity. If the facts be as caveators allege, they are interested in the estate. [However,] [b]ecause the proceeding is *in rem*, the proceed-

ing must go on until the issue *devisavit vel non* is appropriately answered.

Accordingly, the 1967 Will Beneficiaries urge this Court to accept the same reasoning, which does not require a showing of standing pursuant to a prior will until the issue of *devisavit vel non* is resolved pursuant to the subsequent and probated will.

However, the case *sub judice* presents one wrinkle that neither *Tannenbaum*, *Belvin* nor *Hester* contained: The 1967 Will Beneficiaries did not produce the original will. Instead, the 1967 Beneficiaries produced only a copy of an alleged 1967 Will. "It is well established [in North Carolina] that when a will last seen in the testator's possession cannot be found at death a rebuttable presumption arises that the will was revoked." *Matter of Will of Jolly*, 89 N.C. App. 576, 577, 366 S.E.2d 600, 601 (1988) (citing *In re Will of Hedgepeth*, 150 N.C. 245, 63 S.E. 1025 (1909)). Following the logic of this presumption, namely that the will has been revoked, most assuredly the presumption extends to the beneficiaries under that will such that they are presumed by law not to be beneficiaries unless they overcome that presumption that the will was not revoked.[5] Consequently, the 1967 Will Beneficiaries are not beneficiaries at all, rather they are "alleged beneficiaries." In essence, they are individuals who must rebut the presumption that the 1967 Will was not revoked in order to gain the status of being beneficiaries. Otherwise, they are no more than beneficiaries under a will that is presumed to have been revoked. Whereas the beneficiaries in *Hester* did, in fact, benefit under a prior will, the alleged 1967 Will Beneficiaries are claiming an interest in Barnes' estate by virtue of a paper writing that was presumptively invalid as a will under North Carolina law. Indeed, the jury determined that the 1967 Will Beneficiaries did not present evidence to overcome that presumption; accordingly, the trial court entered judgment holding that the 1967 Will had been revoked.

It seems an obvious waste of judicial economy, an affront to the sacred right of testation, and an unreasonable and unjust expectation to require executors and beneficiaries of a will to defend that will upon a caveat from individuals who carry a legal presumption of invalidity. Rather, such "alleged beneficiaries" must, at the very minimum, rebut the presumption and establish standing before a trial on the merits can ensue.

---

5. The presumption that the will has been revoked would also extend to any property to be distributed by the will. Surely, one would not first distribute the property under a will before determining whether that will had been revoked by the testator.

The dissent contends that "even though . . . [a] caveator[] [with merely a copy of a prior will has] the burden of overcoming a presumption that the . . . will had been revoked . . . they [still have] standing to bring [a] caveat." In support of this proposition, the dissent makes two fundamental arguments: (1) "No authority has been cited and none found holding that in a North Carolina will caveat proceeding, the standing of individuals claiming under a copy of a will must be determined first"; and (2) "The presumption [of revocation] tends to support the logic of first determining the validity of the later will, since it makes it more likely that the later will is the last will."

As to the dissent's first argument, in North Carolina, as well as in every other court in this country, standing is the threshold issue in every proceeding. *See e.g.*, *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27 (1993) (noting that "standing [is] a 'threshold inquiry' that 'in no way depends on the merits' of the case."). Seemingly, the dissent proffers that in caveat proceedings the requirement of standing is quite different than in ordinary proceedings. As noted, however, N.C. Gen. Stat. § 31-32 precisely defines who has standing to caveat a will. Section 31-32 specifically limits standing to caveat to "any person entitled under such Will, or interested in the estate." In the case *sub judice*, as noted, the caveators claim standing under a *copy* of a prior will. Apparently, the dissent believes that there is no tenable legal distinction that can be made between a prior will, and a copy of a prior will, for purposes of standing. Although North Carolina has not squarely faced this issue, decisions from other jurisdictions are instructive. In *Werner v. Frederick*, 94 F.2d 627, 630 (D.C. 1937), for instance, the United States Court of Appeals, in holding that a caveator must first rebut presumptions of revocation before attacking the validity of a will, noted that:

> The reason for requiring [the caveator to prove] an interest . . . before an attack upon the will may proceed, is that the estate of a decedent ought not be subjected to the trouble and expense of an attack, except by one who, if the attack prove successful, would have some legal claim upon the estate. And if the former will relied upon, though executed, had been revoked by the testator in some manner other than by the later will, if valid, whatever interest might have arisen in the beneficiary by virtue of execution of the prior will would have ceased, so that at the time of his attack upon the later will he would have no standing.

Thus, the *Werner* Court concluded that in the interest of the propounders, and in the interest of judicial economy, a caveator must

prove a "legal interest" in the estate, before a forum is provided to challenge the will.

As to the dissent's second observation, namely that "logic" dictates resolving the validity of the last will before determining whether the caveators have standing to challenge that will's validity"; we disagree. What purpose would a presumption of revocation serve if the caveators, the individuals burdened by that presumption, were not required, at a minimum, to rebut that presumption before requiring the propounders and the state judicial system to enter into protracted litigation? Our Supreme Court, in the case of *In re Wellborn's Will*, made this point quite succinctly in finding that:

> When [a] will [is] produced without the name of [the testator], this [is] prima facie evidence of a revocation, and the law presumed that it had been revoked. It is true this presumption might be repelled, but the burden of doing so was on the propounder. If this was not so, it would be to require the caveator to rebut the presumption that was in his favor.

165 N.C. at 640, 81 S.E. at 1025. *See also McBride v. Jones*, 494 S.E.2d 319, 321 (Ga. 1998) (where propounder produced a copy of the will, propounder was required to rebut presumption of invalidity before the "the burden shifted to the caveator to prove that the proffered will [was] not valid."). Accordingly, in our view, logic dictates that the one who is burdened by a presumption of invalidity should be required to shed that presumption before gaining the right to challenge a properly probated original will that is presumed to be valid.

Here, neither the trial court nor the jury made a preliminary finding that the 1967 Will Beneficiaries had rebutted the presumption that they did not have standing to caveat the 1989 Will as interested parties. Instead, in the second phase of the jury trial, the jury returned a verdict invalidating the 1967 Will because Barnes destroyed the 1967 Will with an intent to revoke it. Indeed, the jury in effect found that the 1967 Will Beneficiaries did not have standing to file a caveat against the subsequently made 1989 Will.

In this light, we hold that the trial court erred by not first allowing the jury to determine whether the 1967 Will Beneficiaries had presented sufficient evidence to rebut the legal presumption that the 1967 Will had been revoked.[6] Moreover, since we uphold the jury's

---

6. The dissent argues: "To hold that whenever a caveator claims under a prior will, which is later determined to have been revoked, the court thereby loses jurisdiction over the issue of the later will to which the caveat was addressed, would render

determination that the 1967 Will Beneficiaries did not rebut the presumption of invalidity of the 1967 Will, then the 1989 Will must be upheld because the 1967 Will Beneficiaries lacked standing to prosecute a caveat against the 1989 Will.[7] Accordingly, we vacate the trial court's judgment resulting from the caveat proceeding against the 1989 Will.[8]

---

meaningless all of [the] cases in which that has happened." Our holding is not that broad. Instead, we narrowly hold, in accordance with the relevant statute, that standing is a pre-requisite to filing a caveat against a will that is presumed to be valid. Indeed, a caveator producing an *original* prior will is presumed to have standing under Section 31-32. Accordingly, the trial court does not err, nor is the trial court divested of jurisdiction, by a subsequent jury determination of revocation of the prior *original* will. However, when individuals present only a *copy* of an alleged prior will, the law is clear that the prior will is presumed to have been revoked. If the will is presumed to be revoked, the individuals who would have taken under that will must be presumed to have a revoked interest. It follows that in the case *sub judice*, the purported caveators, because they produced only a *copy* of a prior will (meaning the prior will was presumed to have been revoked), were burdened by a presumption of invalidity and lack of standing. Thus, fairness dictates that when individuals can only produce a *copy* of a prior will, they must first show the court that there actually was a prior will before taking issue with an original will that is presumed to be valid.

7. At oral argument, the 1967 Will Beneficiaries conceded that if the jury had been allowed to first determine that the 1967 Will had been revoked, they would not have had standing to challenge by caveat the 1989 Will.

8. The dissent argues that "because [a] will caveat is a proceeding *in rem*, . . . the jury's ultimate determination that the 1967 will had been revoked should [not] be held to erase the subject matter jurisdiction of the superior court over the entire proceeding *ab initio*." We agree. Today, we do not hold that the jury's determination that the 1967 Will was revoked deprived the court of jurisdiction. Instead, we hold only that, because the individuals produced a *copy* of a prior will, which meant that will was presumed to have been revoked, the individuals had to first overcome that presumption of invalidity in order to acquire standing to challenge the probated original will that was presumed to be valid. Thus, as was held by this Court in *Casstevens v. Wagoner,*

> Although it is often stated that, '[w]hen a caveat is filed the Superior Court acquires jurisdiction of the whole matter in controversy,' . . . such a pronouncement does not alter the affirmative statutory requirement that caveat proceedings can only be instituted by due filing of the cause before the clerk of superior court. . . . When a purported caveat is fatally defective from its inception, the superior court acquires no jurisdiction over the cause.

*Casstevens*, 99 N.C. App. 337, 339, 392 S.E.2d 776, 778 (1990). Simply put, once an individual with standing files a caveat, the superior court acquires jurisdiction over the whole controversy; however, this jurisdiction can not be conferred upon the superior court until a caveat is properly filed. In the case *sub judice*, the individuals asserting an interest in the presumptively revoked prior will, had to overcome the presumption that their interest in the estate was presumed to have been revoked. In short, they had to overcome the presumption that they lacked standing to file a caveat. Thus, the superior court's jurisdiction over the "whole controversy" was contingent on caveators' standing, in fact.

IV. The Heirs-At-Law

[4] A final question remains: On remand, do the heirs-at-law have any legal recourse? The dissent contends the heirs-at-law do have recourse. For the reasons stated herein, we disagree.

As noted, pursuant to N.C. Gen. Stat. § 31-32, any person (1) interested in an estate, (2) within three years of an application for probate, (3) may appear before the clerk of the Superior Court and (4) enter a caveat. In the case *sub judice*, the Propounders of the 1989 Will filed an application for probate on 30 November 1996. Accordingly, on 30 November 1999 the statute of limitations expired for any interested party to appear before the clerk of the Superior Court and file a caveat.

On 17 September 1998 the Propounders of a 1967 Will filed a caveat to the 1989 Will. Pursuant to Section 31-33:

Such caveator shall cause notice of the caveat proceeding to be given to all devisees, legatees, or other persons interested . . . . The notice . . . shall call upon [the interested parties] to appear and make themselves *proper parties* to the proceeding if they so chose. . . . [T]he judge shall require any [interested party] . . . to align themselves and to file bond . . . . Upon the failure of any party to file such bond, the judge shall dismiss that party from the proceeding but that party shall be bound by the proceeding.

On 23 January 2001, the Clerk of the Superior Court mailed a Supplemental Citation to Mr. Barnes' heirs-at-law. The Supplemental Citation gave Mr. Barnes' heirs-at-law notice of the caveat, and informed them of their statutory right to "appear and align [themselves] with the Propounder of the 1989 Will, the Caveators of [the] 1989 Will . . . or [to] identify [themselves] as a Caveator to the 1967 Will." The heirs-at-law chose not to align themselves with any of the parties to the proceeding, identify themselves as Caveators to the 1967 Will, actively participate in the first or second phase of the trial, and failed to file a bond.

Accordingly, pursuant to Section 31-33, the trial judge should have dismissed the heirs-at-law from the proceeding for not filing a bond, although the heirs-at-law would have retained the prospect of benefitting from the proceeding. The trial court, however, did not dismiss the heirs-at-law from the proceeding. Accordingly, although the heirs-at-law had the faint hope, which materialized, of taking under

**IN RE WILL OF BARNES**

[157 N.C. App. 144 (2003)]

the laws of intestate succession if both wills were invalidated, the heirs-at-law did not retain the right to file a separate caveat.[9]

The North Carolina Supreme Court, as well as this Court, has consistently held that "the statute permitting caveats is in derogation of the common law," and, therefore, "must be strictly construed." *In re Winborne's Will*, 231 N.C. at 466, 57 S.E.2d at 799; *In re Will of Evans*, 46 N.C. App. 72, 74, 264 S.E.2d 387, 388 (1980). Moreover, these same cases hold that the statute of limitations "is a condition attached to the right. Hence, upon the expiration of the [three year statue] . . . the right [to caveat] ceases to exist." *Id.* Accordingly, on remand, the heirs-at-law do not have legal recourse against the 1989 Will.

In sum, we uphold the jury's finding that the 1967 Will Beneficiaries failed to rebut the presumption that the 1967 Will had been revoked, and therefore, the 1967 Will Beneficiaries did not have standing to challenge by caveat the 1989 Will. It follows that since the 1967 Beneficiaries did not have standing to challenge the 1989 Will, and the heirs-at-law neither aligned themselves as parties nor did they timely file a caveat against the 1989 Will, the judgment arising from the caveat proceeding against the 1989 Will is vacated.

No error in part, vacated in part.

Judge TIMMONS-GOODSON concurs.

Judge HUDSON concurring in part, dissenting in part.

HUDSON, Judge, concurring in part and dissenting in part.

I concur with the analysis of the issues pertaining to Frances Long's testimony and the Testamentary Trust. However, because I believe that the trial judge properly exercised his discretion in the management of the trial by having the jury first consider the validity of the 1989 will, and because I see no reversible error in the trial, I would affirm the judgment.

---

9. This is not the case, as *In re Will of Hester*, 84 N.C. App. 585, 593-94, 353 S.E.2d 643, 650, *rev'd on other grounds*, 320 N.C. 738, 360 S.E.2d 801 (1987), where we held that: "[T]he heirs at law of a deceased testator who have no knowledge of a caveat proceeding and who [were] not cited under [Section] 31-33 are not estopped to file a second caveat nor are they bound by the former judgment sustaining the validity of the script." In the case *sub judice*, the heirs-at-law had notice of the caveat proceeding and were duly notified pursuant to Section 31-33.

IN RE WILL OF BARNES

[157 N.C. App. 144 (2003)]

The majority asserts that, in managing the litigation of the caveat to the 1989 will, the trial judge should have first had the jury determine whether the 1967 will had been revoked. Had the jury ruled that the 1967 will was revoked, goes the reasoning, the caveators, who claimed an interest in the estate as beneficiaries of that will, would have had no standing to litigate the caveat. Since the jury ultimately determined that the 1967 will had been revoked, the caveators had no standing to bring the caveat in the first place, and thus, the court lacked subject matter jurisdiction over the entire caveat proceeding. As a result, the majority reasons, we should treat this matter as if no caveat had been filed, so that the 1989 will stands unchallenged as the last will and testament of Mr. Barnes.

I disagree with this analysis for several reasons. First, I believe that, even though the caveators carried the burden of overcoming a presumption that the 1967 will had been revoked (because they possessed only a copy), under North Carolina case law as it existed at the time, it appeared that they had standing to bring the caveat. When they filed it, they thereby invoked the jurisdiction of the court. Second, by bringing the caveat, the caveators triggered the court's duty to determine the validity of the 1989 will, which is the one the caveat challenged, and the court acted within its discretion in having the jury first address the issues pertaining to that will. Third, because the will caveat is a proceeding *in rem*, I do not believe that the jury's ultimate determination that the 1967 will had been revoked should be held to erase the subject matter jurisdiction of the superior court over the entire proceeding *ab initio*. Fourth, I believe that the heirs here could have timely filed a caveat, because they were not timely notified of the proceedings here. And finally, whether or not they could have filed or did in fact file such a caveat or align with a pending caveat is irrelevant, because if neither will was valid, they would inherit by operation of law.

According to the applicable statute any person "interested in the estate" may file a caveat within three years after the will is submitted for probate. N.C. Gen. Stat. § 31-32 (2001). Persons claiming under a prior will, such as the caveators here, are such interested persons. *Sternberger v. Tannenbaum*, 273 N.C. 658, 674, 161 S.E. 2d 116, 127 (1968). Whenever persons claiming under a prior will institute a caveat, they are potential, not certain, beneficiaries of the estate in question. Even if their claimed interest in the estate ultimately is not upheld, they nonetheless have standing to litigate the issues. Similarly, the caveators here, who claimed an interest in the estate by

**IN RE WILL OF BARNES**

[157 N.C. App. 144 (2003)]

virtue of an earlier will, had standing to litigate the issues, even though their interest ultimately was not upheld. Thus, by filing the caveat, the 1967 Will Beneficiaries properly instituted these proceedings, and invoked the subject matter jurisdiction of the clerk and the superior court.

When they did so, they placed at issue the validity of the 1989 will.

"When a caveat is filed the superior court acquires jurisdiction of the whole matter in controversy, including both the question of probate and the issue of devisavit vel non (citation omitted). Devisavit vel non requires a finding of whether or not the decedent made a will and, if so, whether *any of the scripts* before the court is that will." *In re Will of Hester*, 320 N.C. 738, 745, 360 S.E.2d 801, 806 (1987), *reh'g denied*, 321 N.C. 300, 362 S.E.2d 780 (1987) (citing *In re Will of Charles*, 263 N.C. 411, 139 S.E.2d 588 (1965)). Thus, in a case such as this one, where there are presented multiple scripts purporting to be the decedent's last will and testament, the issue of devisavit vel non should be resolved in a single caveat proceeding in which the jury may be required to answer numerous sub-issues . . . [T]he trial court is vested with broad discretion to structure the trial, including the discretion to sever the issues and submit them separately to the same jury . . . .

*In re Will of Dunn*, 129 N.C. App. 321, 325-26, 500 S.E.2d 99, 102 (1998), *disc. review denied*, 348 N.C. 693, 511 S.E.3d 645 (1998). It is well established that the trial court has broad discretion in the management of the trial, and I believe that the trial judge here exercised that discretion properly. As in *Dunn* and *Hester*, the trial court properly took up the matter of the later will first, since if that will were found valid, it would constitute the last will and testament of the decedent, thereby mooting the issues pertaining to the earlier will. As the Supreme Court pointed out in *Hester*:

[T]he interests of judicial economy and convenience were well served by separate presentation of issues as to the 1983 script. Had the jury determined that the 1983 script was in fact a valid last will and testament, the issues as to the earlier scripts would have been mooted and the proceeding need not have continued. The judge logically may have considered submission of the issues as to other scripts premature until the [later will] issues were answered.

*In re Will of Hester,* 320 N.C. 738, 743-44, 360 S.E.2d 801, 805 (1987), *reh'g denied,* 321 N.C. 300, 362 S.E.2d 780 (1987). Thus, I do not believe that the trial court erred or abused its discretion by submitting to the jury the issues pertaining to the 1989 will first.

The majority here, however, addresses the issue of the 1967 will first, concludes that it was revoked, and that the caveators thus had no standing to challenge the 1989 will. By addressing the 1967 will first, and upholding the determination that it had been revoked, the majority implicitly holds that the trial judge abused his discretion by taking up the 1989 will first. Since I do not believe that he did, I cannot concur with this analysis. Having concluded as I have that the trial court properly addressed first the matter placed in issue by the caveat (the 1989 will), I do not believe that it is appropriate for us to decide the issues based on what could have been the outcome had the trial judge exercised his discretion differently. He did not, and I believe that we are bound to address the issues as they come to us. As long as the 1967 Will Beneficiaries continued to claim under that will, which they did throughout the first phase of the trial, they had standing to do so, and the jury's verdict is a valid determination of the issues at that phase.

If this Court chooses to adopt a new rule, specifically holding that when caveators produce only a copy of the will under which they claim, they must, as a threshold matter, rebut the presumption of revocation, the Court may certainly do so. With such a rule, I do not necessarily disagree. However, no such rule had been articulated at the time of this trial by our Courts, and none of the cases cited by the majority on this point involve will contests, except *Casstevens,* 99 N.C. App. 337, 392 S.E.2d 776 (1990), in which no caveat at all had been filed. Thus, I do not believe the trial judge abused his discretion in not divining such a rule and acting accordingly. In light of all the cases giving broad discretion in trial management, I believe he acted reasonably.

This is especially clear in light of the cases explaining the significance of a proceeding *in rem.* Our Supreme Court has stated that in a will caveat the

"proceeding is *in rem,* in which the court pronounces its judgment as to whether the *res, i.e.,* the script itself, is the will of the deceased. *In re Hinton,* 180 N.C. 206, 104 S.E.2d 341 (1987)." *Brissie v. Craig,* [232 N.C. 701, 62 S.E.2d 330], *supra.* The will is the *res.*

IN RE WILL OF BARNES

[157 N.C. App. 144 (2003)]

*In re Will of Charles*, 263 N.C. 411, 415, 139 S.E.2d 588, 591 (1965). As the Court in *Charles* pointed out, when a will is presented, it "stands as the testator's will and only will, until challenged and reversed in a [caveat] proceeding." *Id.* Here, once the caveat was filed by persons claiming an interest in the estate through a prior will, the court acquired jurisdiction over the matter of the validity of the 1989; that will became the *res* at issue.

Our Supreme Court has also explained, though not often, the difference between a proceeding *in rem*, and a typical proceeding between litigants.

> This is a proceeding *in rem* and the statute confers jurisdiction on the clerk of the court. There are no parties, strictly speaking, certainly none who can withdraw or take a nonsuit, and thus put the matter where it was at the start, as in actions between individuals. A nonsuit in the latter case affects no one but the litigants; in the former, creditors, legatees and distributees are interested and they are stayed until the question of testacy or intestacy is determined. The court having *jurisdiction*, public policy and our statutes require that this preliminary question [of testacy] should be determined as soon as practicable, and require the court to do it, regardless of objecting persons.

*In re Will of Westfeldt*, 188 N.C. 702, 705, 125 S.E. 531, 533 (1924) (citations and quotation marks omitted). None of the cases cited as authority involved a will caveat, and I do not believe the analysis of standing of the parties applies here. No authority has been cited and none found holding that in a North Carolina will caveat proceeding, the standing of individuals claiming under a copy of a will must be determined first. In fact, the presumption that the earlier will has been revoked tends to support the logic of first determining the validity of the later will, since it makes it more likely that the later will is the last will. Thus, I believe that once the caveat to the 1989 will was filed by persons claiming an interest in the estate through a prior will, the court acquired jurisdiction over the *res* and the court was required to proceed as it did, to resolve the issue of devisavit vel non.

The authorities cited, which address the role of standing of the parties in conferring jurisdiction on the court, are not applicable to this case, in my opinion. Instead, I believe that when a person fits within the definition of an interested party under G.S. § 32-31 by claiming under a prior will, and that person timely files a caveat, the

court acquires jurisdiction of the *res*. To hold that whenever a caveator claims under a prior will, which is later determined to have been revoked, the court thereby loses jurisdiction over the issue of a later will to which the caveat was addressed, would render meaningless all of these cases in which that has happened. It would also produce the illogical result that beneficiaries under such a later will would inherit under an instrument which the jury has found was made by a testator at a time when he lacked the mental capacity to do so.

The case here is not distinguishable in any meaningful way from *Hester*, in which the caveators challenged a later will on grounds of lack of mental capacity and alleged their interest from a prior will. As noted by the majority, this Court stated:

> [P]ropounders contend that [a] beneficiary under a prior will does have standing to caveat a will but such a beneficiary must, in the same proceeding, prove the interest alleged. We disagree. . . . If the facts be as caveators allege, they are interested in the estate. Because the proceeding is *in rem*, the proceeding must go on until the issue *devisavit vel non* is appropriately answered.

*In re Will of Hester*, 84 N.C. App. 585, 594, 353 S.E.2d 643, 650, (internal citations and quotation marks omitted), *rev'd on other grounds*, 320 N.C. 738, 360 S.E.2d 801 (1987). The majority distinguishes this case because here the caveators produced a copy, rather than the original, of the 1967 will, thereby giving rise to a presumption that the will had been revoked. I do not believe that this presumption alters the jurisdiction of the court over the *res*, once the caveat has been filed by persons who claim an interest. It may change their burden of proof on that issue, but it does not change the fundamental nature of the proceeding. Thus, I believe *Hester* is controlling on this point.

And finally, I disagree that since the heirs at law neither filed a caveat nor aligned themselves with the caveators or propounders to the 1989 will, they have no legal recourse. On 23 January 2001, less than a week before the matter was scheduled for trial, notice was sent to the heirs at law, informing them that a caveat had been filed to the 1989 will and that the caveators intended to probate the 1967 will. The notice did not indicate that the matter was set for trial, nor did it indicate when the heirs should respond, if they chose to do so. The will caveat trial began 29 January 2001, and the judgment was signed 22 February 2001. On 26 February 2001, the lawyers for the

heirs entered their notices of appearance, and a few days later, gave "Notice of Joinder per Rule 5." Then they filed briefs as Appellees in this Court.

Although the heirs acted promptly upon being notified, the judgment on the caveat had already been entered. Thus, it would have been impossible for them to intervene and align themselves at that point. As in *Hester*, these heirs were not bound by the judgment and could have filed a caveat; in fact, I believe they still can, within three years from the notice. However, since the Courts have held repeatedly that all issues should be determined in one proceeding, they acted properly in appearing as they did. By the time that they did so, there was no need to align themselves with either set of beneficiaries, since both of the wills had been rejected by the jury. In my opinion they acted appropriately in appearing and joining when they did as non-aligned appellees. However, whether they had done so or not, they would inherit by operation of law if the judgment is upheld.

In conclusion, I would hold (1) that when the caveat was filed the court acquired jurisdiction of the *res*; (2) that the trial court acted within its discretion in managing the trial by first addressing the 1989 will; and (3) that the judgment entered upon the jury's verdicts was proper in all respects.